William KATZ, Plaintiff,

v.

THE DIME SAVINGS BANK, FSB,
and Federal National Mortgage
Association, Defendants.

No. 91–CV–675C.

United States District Court,
W.D. New York.

Dec. 19, 1997.

William Katz, pro se.

Saperston & Day, P.C. (Bruce S. Zeftel, of counsel), Buffalo, NY, for Defendants.

DECISION and ORDER

CURTIN, District Judge.

## BACKGROUND

Plaintiff, William Katz, brought this action seeking an injunction to prevent defendants The Dime Savings Bank of New York, FSB ("Dime") and Federal National Mortgage Association ("FNMA") from foreclosing on a mortgage on which plaintiff has defaulted and for damages for breach of an alleged agreement to "work out" plaintiff's default, as well as for violations of the Servicer Act, 12 U.S.C. § 2605.[1] With respect to his damages claims, plaintiff is seeking (1) "actual" and statutory damages for defendants' violations of the Servicer Act, and (2) "actual" and punitive damages, in the sum of $1,000,000, for defendants' breach of the alleged workout agreement (Item 1, pp. 8–9). Currently pending is defendants' motion for partial summary judgment (Item 81). Defendants request that this court dismiss plaintiff's claims for punitive damages, for damages for personal injury and economic loss, and for statutory damages in excess of $1,000 (Item 82, p. 3). The parties appeared for oral argument on the motion on November 19, 1997.

On or about March 25, 1997, Dime loaned $135,200.00 to plaintiff, the repayment of which was secured by a mortgage on plaintiff's home (Item 82, p. 2; Item 83, ¶¶ 1–2). The mortgage was duly recorded in the Office of the Clerk of the County of Erie on March 25, 1997 (Item 83, ¶ 3). Defendants

---

**1.** The Servicer Act in part requires any servicer of a federally related mortgage loan, upon receipt of a qualified written request from a borrower for information relating to the servicing of such loan, to (1) provide a written response acknowledging receipt of the correspondence within 20 days unless the action requested is taken within such period, (2) take specific investigatory and/or remedial actions and provide the borrower with written notification of such actions within 60 days, and (3) refrain from providing information regarding overdue payments owed by the borrower to any consumer reporting agency during the 60-day period.

contend that in July 1987, Dime sold plaintiff's note and mortgage to FNMA, and thereafter repurchased the note and mortgage in August 1991 (*Id.*, ¶ 4). Although plaintiff acknowledges that at some time after the loan and mortgage were entered into, Dime sold the mortgage to FNMA (Item 1, ¶ 9), plaintiff disputes that FNMA transferred the mortgage back to Dime in August 1991 (Item 90, ¶ 1). Plaintiff therefore asserts that FNMA is the owner, by right of assignment, and that Dime is the servicer, as agent of FNMA, of the mortgage (Item 1, ¶¶ 9 and 11).

Defendants contend that in January 1991, plaintiff defaulted on his obligations under the loan by failing to pay amounts due in principal, interest, and escrow (Item 82, p. 2; Item 83, ¶ 5). Defendants further assert that after plaintiff's default, Dime unsuccessfully attempted on several occasions to contact plaintiff by phone in an effort to secure payments from him (Item 82, p. 2). Defendants contend that by letter dated July 1, 1991, Dime notified plaintiff that it was exercising its option to call the mortgage and demand payment of the entire balance and interest due by reason of plaintiff's failure to make payments for the months of January 1991 through July 1991 (Item 83, ¶ 6). Defendants claim that under paragraph 31 of the mortgage agreement, the holder was entitled to require plaintiff to pay immediately the entire amount remaining unpaid under the note and mortgage if plaintiff failed to keep any promise or agreement therein, including promises to pay when due the amounts owed to the lender (*Id.*, ¶ 8). Defendants contend that at the time Dime accelerated plaintiff's note, there was due and owing a principle balance of $131,757.70, plus interest of over $60,000, late charges, and amounts advanced by Dime in excess of $27,-000 to pay taxes, hazard insurance, premiums on insurance policies, taxes, and water rates (*Id.*, ¶¶ 9 and 11).

Plaintiff disputes nearly all of defendants' claims regarding plaintiff's default on the loan and mortgage, Dime's efforts to secure payments, Dime's right to accelerate the note and mortgage, Dime's efforts to notify plaintiff that it was exercising such a right, the amount due at the time Dime accelerated the note and mortgage, and Dime's tax and insurance payments for the mortgaged property (Item 90). Nevertheless, attached to his affirmation submitted in opposition to defendants' motion for partial summary judgment (Item 92), plaintiff has supplied copies of his correspondence to and from Dime during the period at issue. These documents show that (1) in January 1991 plaintiff had defaulted on his loan payments (*Id.*, Exhibits 16–20, 23), (2) Dime made repeated attempts to secure payment (*Id.*, Exhibits 19 and 23), and (3) Dime notified plaintiff in July 1991 that it was exercising its option to call the mortgage (*Id.*, Exhibit 46).

Although plaintiff disputes that he breached his obligations under the loan and mortgage (Item 90, ¶ 2), he claims that in the spring of 1991 he entered into negotiations with Dime with regard to certain payments due under the mortgage which had become past due as a result of his ill health (Item 1, ¶ 10). Plaintiff contends that as a result of these negotiations, Dime, as servicer of the mortgage, offered to accept eight payments, each in the sum of $2,982.57, in place of the regular monthly payments due under the terms of the mortgage (*Id.*, ¶ 11). Allegedly, these payments were to cure the past due amount owing and to bring the mortgage current (*Id.*). To prove the existence of this workout agreement, plaintiff has provided the court with (1) a letter, dated April 5, 1991, which plaintiff allegedly sent to Ms. E. Collins at Dime that was intended to memorialize an alleged prior conversation during which the agreement was reached (Item 92, Exhibit 31), and (2) a letter, dated April 2, 1991, from Dime setting forth a new repayment schedule of five monthly payments of $2,982.00 designed "to bring [plaintiff's] account current" (*Id.*, Exhibit 35).

Plaintiff alleges that on April 5, 1991, he accepted Dime's offer and made, in consideration of the mutual promises, the first of the eight payments required under the agreement (Item 1, ¶ 12). Plaintiff contends that Dime accepted and deposited plaintiff's cashier's check in the agreed sum of $2,982.57 and sometime thereafter sent plaintiff a statement of account with regard to the

mortgage (*Id.*, ¶ 13–14).[2] Plaintiff asserts that upon receipt of this statement, plaintiff sent Dime a "qualified written request" inquiring as to the application of the $2,982.57 and requesting information relating to the servicing of the loan (*Id.*, ¶ 15; Item 92, Exhibit 38).

Plaintiff alleges that on or about May 6, 1991, June 3, 1991, and July 12, 1991, he delivered to Dime, as servicer and agent of FNMA, additional cashier's checks, each in the amount of $2,982.57, as payments under the alleged workout agreement (Item 1, ¶¶ 16, 19, 22; Item 92, Exhibits 39–41, 43–45, 47–49). Plaintiff claims that Dime refused to credit plaintiff's account with each of these payments, in violation of the terms of the alleged workout agreement, and subsequently returned each check to plaintiff (Item 1, ¶¶ 17, 20, 23). Plaintiff further claims that upon receipt of each returned payment, he sent Dime a "qualified written request" inquiring as to the application of the funds that had been paid to Dime, as servicer and agent of FNMA, and requesting information relating to the servicing of the loan (*Id.*, ¶¶ 18, 21, 24; Item 92, Exhibit 42). Plaintiff submits that Dime failed to investigate and report back in response to his qualified written requests, as required by 12 U.S.C. § 2605, and that Dime violated the consumer protection provisions of section 2605 by making credit reports that indicate overdue payments in dispute (Item 1, ¶¶ 25–26).

Defendants have denied the existence of any workout agreement with plaintiff, as well as the technical violations of section 2605 (Item 82, p. 3). They have not supplied any additional documentation of communications between Dime and plaintiff during the relevant period, nor have they explained why they continue to deny the existence of a revised repayment schedule in the face of plaintiff's supporting documentation. Defendants contend that the question of what damages are recoverable by plaintiff is not dependent on any of these facts but, rather, solely presents an issue of law for this court to determine (Item 95).

In October 1991, several days after plaintiff had commenced the present action against defendants, Dime commenced an action against plaintiff in New York State Supreme Court for the foreclosure and sale of the mortgaged premises (*Id.*, p. 2). Defendants submit that paragraph 31 of the mortgage agreement provided Dime with the right to bring a lawsuit to take away all of plaintiff's remaining rights in the subject property and to have the property sold pursuant to a foreclosure and sale proceeding (*Id.*, Item 83, ¶ 8). Dime's state Supreme Court action was dismissed without prejudice, and Dime has asserted a counterclaim in the present action for foreclosure (Item 82, p. 3; Item 24, ¶¶ 14–32). Although this court would not have jurisdiction over defendants' foreclosure counterclaim if defendants had originally brought that claim before this court, the claim is a compulsory counterclaim pursuant to Fed.R.Civ.P. 13(a) because the claim arises out of the transaction or occurrence that is the subject matter of the opposing party's claim, and therefore this court has jurisdiction over it.

Plaintiff has remained in possession of the mortgaged premises throughout the pendency of this lawsuit.

### *DISCUSSION*

#### I. *Punitive Damages*

■ Plaintiff seeks punitive damages in the sum of $1,000,000.00 against Dime on plaintiff's breach of contract claim (item 1, p. 9). Both sides acknowledge that the general rule under New York law is that punitive damages are not recoverable for ordinary breach of contract claims. *See Maier–Schule GMC, Inc. v. General Motors Corp.*, 850 F.Supp. 1095, 1104 (W.D.N.Y.1994), *affd*, 62 F.3d 1412 (2d Cir.1995). Defendants contend that punitive damages are only permitted where the breach of contract also involves fraudulent conduct which is aimed at the public generally and evinces a high degree of moral turpitude (Item 82, p. 5). *See Rocano-*

---

2. As proof that Dime accepted and deposited plaintiff's first payment, plaintiff has furnished a letter, dated May 23, 1991, from Key Bank of Western New York N.A., the bank from which plaintiff obtained the cashier's check for his first payment, which confirms that the check made payable to Dime was paid on April 15, 1991 (Item 92, Exhibit 36).

va v. Equitable Life Assur. Soc., 83 N.Y.2d 603, 612 N.Y.S.2d 339, 342, 634 N.E.2d 940 (1994); Walker v. Sheldon, 10 N.Y.2d 401, 223 N.Y.S.2d 488, 490–91, 179 N.E.2d 497 (1961). Plaintiff argues that punitive damages are appropriate in cases where the actions of the breaching party merely "involve that degree of bad faith evincing a disingenuous or dishonest failure to carry out a contract." (Item 91, p. 4). Plaintiff relies on Aero Garage Corp., v. Hirschfeld, 185 A.D.2d 775, 586 N.Y.S.2d 611 (1st Dept.1992), which held that the plaintiff was entitled to punitive damages due to the defendant's "fully knowing and intentional breach of unambiguous contractual provisions, the flouting of court ordered injunctions and the bad faith institution of administrative proceedings." Id., at 613. Plaintiff contends that Dime's behavior meets this standard.

■ Although plaintiff is correct in noting that the court in Aero Garage Corp. appeared to nullify the "public wrong" requirement, the New York State Court of Appeals' subsequent specific endorsement of the "public wrong" requirement in Rocanova sheds doubt on the continued viability of the Aero Garage Corp. holding. The Rocanova court explained that

> [p]unitive damages are not recoverable for an ordinary breach of contract as their purpose is not to remedy private wrongs but to vindicate public rights. However, where the breach of contract also involves fraud evincing a "high degree of moral turpitude" and demonstrating "such wanton dishonesty as to imply a criminal indifference to civil obligations", punitive damages are recoverable if the conduct was "aimed at the public generally."

Rocanova, 612 N.Y.S.2d at 342, 634 N.E.2d 940 (quoting Walker, 223 N.Y.S.2d at 491, 179 N.E.2d 497). The court further explained that "a private party seeking to recover punitive damages must not only demonstrate egregious tortuous conduct ..., but also that such conduct was part of a pattern of similar conduct directed at the public generally." Rocanova, 612 N.Y.S.2d at 343, 634 N.E.2d 940. The court concluded that "this extraordinary remedy will be available only

in a limited number of instances." Id. (internal quotations omitted).

Punitive damages are not appropriate in the present action. Plaintiff alleges a breach of a private agreement between him and Dime concerning an alleged workout plan following plaintiff's default on the subject mortgage. His complaint does not allege any public wrong, moral turpitude, or wanton dishonesty. Plaintiff's subsequent allegations that defendants intentionally and willfully breached their contractual obligations under the workout agreement and that they embarked on a course to thwart plaintiff's contractual rights at every turn (Item 91, pp. 6–7), even if they are true, are not sufficient to demonstrate egregious tortuous conduct that is part of a pattern of similar conduct directed at the public generally.

■ Plaintiff incorrectly suggests that it is defendants' burden to provide the court with evidence that no recoverable damages could be proven (Id., p. 3). It is plaintiff's burden to prove that he is entitled to punitive damages, not the defendants' burden to prove that plaintiff is not so entitled. Although plaintiff is correct that pro se pleadings are to be given a "liberal construction," Haines v. Kerner, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), when considering a motion for summary judgment, the court must base its decision on the supporting memoranda of law, affidavits, and exhibits submitted therewith, as well as the original pleadings. Thus, even affording plaintiff's pleadings the liberal construction they are due, plaintiff has failed to meet his burden of proving that he is entitled to punitive damages by demonstrating that Dime's conduct was either sufficiently egregious or aimed at the public. Plaintiff's impassioned pleas during the November 19, 1997, oral argument about how any citizen who might receive the same treatment as he received from Dime would be outraged do not satisfy plaintiff's burden.

## II. Damages for Personal Injury

Plaintiff contends that he is entitled to actual damages arising out of both defendants' breach of contract and violations of the Servicer Act. Although he did not expressly

include damages for personal injuries arising out of defendants' conduct in the prayer for relief in his complaint, throughout the course of this action plaintiff has claimed that he is entitled to such damages.

■ With regard to the breach of contract claim, defendants correctly note that under New York law, non-economic loss is not compensable in a contract action (Item 82, p. 7). *See Weeks v. Local 1199, Drug, Hosp. and Health Care Employees Union,* 892 F.Supp. 568, 573–74 (S.D.N.Y.1995), *a'ffd in part, vacated in part on other grounds sub nom, Ascenio v. Local 1199 Drug, Hosp. and Health Care Employees Union,* 101 F.3d 684 (2d Cir.1996); *Marcella v. ARP Films, Inc.,* 778 F.2d 112, 119 (2d Cir.1985); *Geler v. National Westminster Bank U.S.A.,* 770 F.Supp. 210, 215 (S.D.N.Y.1991) (this same rule has been held to apply even when the breach was in bad faith). The purpose of contract damages is to put a plaintiff in the same economic position he or she would have occupied had the contract been fully performed. Plaintiff has not challenged this assertion. Thus, plaintiff cannot recover damages for non-economic loss.

■ As for plaintiff's claim brought under the Servicer Act, the damages provision of 12 U.S.C. § 2605 provides for actual damages to the borrower as a result of the mortgage servicer's failure to comply with the provisions of the Act. 12 U.S.C. § 2605(f)(1)(A). Although he acknowledges that the statute does not expressly include non-pecuniary loss within the rubric of actual damages, plaintiff urges the court to interpret "actual damages" in this statutory context to include all types of damages, including emotional distress and personal injury (Item 91, pp. 9–13). A major purpose of section 2605 is to ensure accurate credit reporting in connection with mortgage payments to avoid the otherwise adverse economic effects a borrower might suffer from the release to potential creditors of inaccurate credit information. Defendants argue that actual damages should be limited to pecuniary losses only and that in the absence of any case law or legislative history directly

on point, the court should adopt this more narrow definition of actual damages (Item 82, pp. 8–9).

Defendants suggest that several courts' interpretations of the damages provision of the Privacy Act, in which "actual damages" were limited to pecuniary damages only, is instructive (Item 82, pp. 8–9). *See, Fitzpatrick v. Internal Revenue Service,* 665 F.2d 327 (11th Cir.1982); *DiMura v. Federal Bureau of Investigation,* 823 F.Supp. 45 (D.Mass. 1993). There is merit to plaintiff's argument that these Privacy Act cases do not apply here (Item 91, p. 10). In each of those cases, the courts narrowly interpreted the phrase "actual damages" due to the government's sovereign immunity. The defendants in the instant case do not have the benefit of sovereign immunity; therefore, the Privacy Act cases are not helpful in this case. Nevertheless, the court finds that even if defendants failed to comply with the substantive provisions of section 2605 on at least three separate occasions, and this caused or exacerbated plaintiff's physical or emotional illnesses, he is not entitled to recover damages for personal injuries as part of his "actual damages" under section 2605(f)(1)(A).

Plaintiff contends that this court should construe section 2605(f)(1)(A) broadly to include personal injuries as a form of recoverable actual damage, arguing that it is a consumer protection statute. He notes that many courts have held that consumer protection statutes are to be interpreted broadly in order to give effect to their remedial purposes, *see Rodash v. AIB Mortgage Co.,* 16 F.3d 1142, 1144 (11th Cir.1994) (Truth in Lending Act should be liberally construed); *Frey v. Gangwish,* 970 F.2d 1516, 1521 (6th Cir.1992) (The Fair Debt Collection Practices Act ("FDCPA") is "an extraordinarily broad statute"). But, section 2605 is not a consumer protection statute. Section 2605 is part of the chapter of federal banking law involving real estate settlement procedures. It was originally enacted by Congress in 1990 as part of the Affordable Housing Act (P.L. 101–625).[3] The legislative history for the

---

**3.** Section 2605 was originally under Title IX of the Affordable Housing Act, entitled "Community

Development and Neighborhood Development and Preservation", subtitle C "Regulatory Pro-

Affordable Housing Act explains that the purpose of the Act was "to authorize a comprehensive, new housing policy that can mobilize sustained national effort to provide more affordable housing for all Americans." S.REP. No. 101–316, at 5 (1990), *reprinted in* 1990 U.S.C.C.A.N. 5763, 5769. Thus, the duty of a loan servicer to respond to borrower inquiries is just one small part of a broad statute designed to help facilitate home ownership. The similarity of wording of the provisions of section 2605 to those of consumer protection statutes is not sufficient to require this court to read a broader purpose into section 2605 or to insert additional content into the damages provisions.

On its face, section 2605 is designed to streamline the servicing of mortgage loans and to clarify the disclosures that loan servicers are required to make to the borrower. The damage provisions recognize that if the loan servicer fails to follow the required procedures, the borrower may suffer pecuniary harm, such as the subsequent denial of credit due to accounting errors. If Congress had intended for this statute to have a broader remedial purpose, then it would have explained such an intention either in the language of the statute or the accompanying legislative history. It is for Congress to proscribe appropriate penalties, not the courts.

### III. *Damages for Economic Loss*

■ Defendants do not challenge the fact that plaintiff would be entitled to recover damages for economic loss for both his breach of contract claim and his statutory claim; however, they argue that plaintiff has failed to either allege or prove economic loss resulting from defendants' actions. Specifically, defendants note that although plaintiff alleges that Dime "made credit reports which indicate overdue payments in dispute," he failed to allege or supply any proof that he suffered any pecuniary loss as a result of such reports, such as the denial of credit based on those reports (Item 82, p. 10–11). Furthermore, defendants argue that the

facts establish that plaintiff has received a financial windfall in that since the default, Dime has paid various costs associated with the mortgaged property, all to plaintiff's financial benefit (*Id.*, p. 10). Consequently, defendants contend that plaintiff will be unable to prove any pecuniary loss in this action and urge the court to find that plaintiff is not entitled to recover damages for economic loss as a matter of law (*Id.*).

Plaintiff argues that his affirmation submitted in opposition to defendants' motion for summary judgment at least creates a question of fact as to whether he suffered economic losses as a result of defendants' actions (Item 91, pp. 13–14). In his affirmation, plaintiff submits that he has "incurred more than $25,000 in legal expenses, ha[s] been unable to refinance or sell [his] home, and ha[s] been unable to benefit from the mortgage deductions which should have resulted from the payments unreasonably refused by Dime" (Item 92, ¶ 83). At oral argument, plaintiff argued that the question of whether he suffered economic injuries is for the jury to decide at trial.

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate where the evidence demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Under this rule, "the moving party has the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 156, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). This court emphasizes that in considering a motion for summary judgment, the evidence and the inferences to be drawn therefrom must be "viewed in the light most favorable to the party opposing the motion." *Id.*, at 158–59; *Arledge v. Stratmar Systems, Inc.*, 948 F.2d 845, 847 (2d Cir.1991). If the moving party has made a sufficient showing, the non-moving party must then present evidence to show "that a reasonable jury could return a verdict" in its favor to defeat the motion. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106

grams." *See* H.R.CONF REP. No. 101–943, at 510–513, *reprinted in* 1990 U.S.C.C.A.N. 5763, 6215–

18.

S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, a motion for summary judgment will not be defeated merely on the basis of conjecture or surmise. *Bryant v. Maffucci*, 923 F.2d 979, 985 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

Plaintiff's unsupported claim of economic injury contained in paragraph 83 of his affirmation does not meets this standard. Plaintiff has not provided any evidence that he either intended to refinance or sell his home or that he was denied such opportunities as a result of defendants' conduct. Plaintiff cannot defeat defendants' motion merely by listing economic harm that might have occurred as a result of defendants'· conduct. Plaintiff's contentions that he will provide such proof at trial are inadequate as a matter of law. Without some objective evidence of the economic harm he alleges, plaintiff's claim for damages for economic loss cannot survive defendants' motion for summary judgment as a matter of law.

## IV. *Statutory Damages Under 12 U.S.C. § 2605(f)(1)(B)*

Plaintiff also seeks statutory damages as provided by 12 U.S.C. § 2605(f)(1)(B). This subsection authorizes statutory damages in addition to any actual damages plaintiff has been able to demonstrate. Title 12 U.S.C. § 2605(f) states in relevant part:

> Whoever fails to comply with any provision of this section shall be liable to the borrower for *each such failure* in the following amounts:
>
> (1) Individuals
>
> In the case of any action by an individual, an amount equal to the sum of—
>
> (A) any actual damages to the borrower as a result of the failure; and
>
> (B) any additional damages, as the court may allow, *in the case of a pattern or practice of noncompliance* with the requirements of this section, in an amount not to exceed $1,000.

(emphasis added).

Two questions must be addressed. First, the court has decided that plaintiff is not entitled to punitive damage, physical or emotional damage, and economic loss. Does section 2605(f)(1) authorize statutory damages under subsection (B) in cases where the plaintiff is unable to prove actual damages and thereby recover damages under subsection (A)? Put another way, are the additional statutory damages authorized under 2605(f)(1)(B) only available in cases where a plaintiff has demonstrated actual damages, or are they available in any case where a plaintiff can demonstrate a technical violation of the statute? Second, if plaintiff is entitled to damages under section 2605(f)(1)(B), what does the phrase "pattern or practice" mean in the context of this statute? The parties have not addressed the first question, and have only partially addressed the second.

Defendants argue that assuming plaintiff can demonstrate any violations of section 2605, statutory damages are limited to $1,000 for the entire proceeding, not for each separate violation (Item 82, p. 12). Focusing on the "for each such failure" language, plaintiff argues that the statute unambiguously authorizes a $1,000 damage award for each violation of the statute (Item 91, pp. 15–16; Item). Without discussion of the significance of the "for each such failure" language, defendants contend that the statute unambiguously provides that statutory damages are to be awarded only for a "pattern or practice," which inherently includes more than a single violation (Item 82, p. 12). Thus, defendants contend that plaintiff's recovery under section 2605(f)(1)(B) is limited to a total of $1,000.

Defendants' argument that this court should be guided by the Sixth Circuit's construction of the damages section of the FDCPA, 15 U.S.C. § 1692k(a)(2)(A) in *Wright v. Finance Service of Norwalk, Inc.*, 22 F.3d 647 (6th Cir.1994), is not conclusive (Item 82, p. 12). Although section 1692k(a)(2)(A) of the FDCPA does authorize additional statutory damages in cases brought by an individual, as the court may allow, not to exceed $1,000, the absence of the introductory language which is present in 12 U.S.C. § 2605(f) (*i.e* ., "for each such failure") and the absence of the "in the case of a pattern or practice" language sufficiently distinguishes the two damages provisions, renders cases interpreting section

1692k(a)(2)(A) of the FDCPA inapplicable, and requires the court to conduct a more thorough analysis of section 2605(f).

Defendants correctly note that Congress knows how to specifically authorize a statutory damage award for each violation of a statute. For example, the Cable Communications Policy Act, 47 U.S.C. § 605(e)(3)(C)(I)(II), authorizes statutory damages of at least $10,000 "for each violation" of the substantive terms of the statute, the Truth in Lending Act, 15 U.S.C. § 1640(a)(2)(A)(I), authorizes statutory damages that are to be computed on a per transaction basis, and the Clean Water Act, 33 U.S.C. § 1319(d) allows for a $25,000 "per day" fine for violations of the statute. The absence of similar specific language authorizing statutory damages for each incident is significant.

■ Unfortunately, there are no cases construing the damages provisions of section 2605 in this or any other federal circuit, nor is there much legislative history for these provisions. "[W]hen a statute speaks with clarity to an issue judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished." *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992) (citing *Demarest v. Manspeaker*, 498 U.S. 184, 190, 111 S.Ct. 599, 112 L.Ed.2d 608 (1991)). Upon careful reading of section 2605(f), the court finds that the statute unambiguously authorizes additional statutory damages of up to $1,000 only in those cases where the servicer of the mortgage has engaged in a pattern or practice of noncompliance. But in the context of this statute, what do the words "pattern or practice" mean? Are three violations sufficient? Must there be a violation against a number of individuals? Must the violation be over a period of time? And if so, how much time?

Plaintiff's recommended interpretation of section 2605(f) ignores the "pattern or practice of noncompliance" language in subsection (1)(B). "Without a clear congressional command otherwise, [a court must] not construe a statute in any way that makes some of its provisions surplusage." *State of N.Y. v. Shore Realty Corp.*, 759 F.2d 1032, 1044

(2d Cir.1985). One would think that if Congress had intended that statutory damages be available for single violations of the Act, it would have not inserted the phrase "in the case of a pattern or practice of noncompliance." Congress has used this "pattern or practice" language in numerous statutes. For example, the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. § 6104(a), authorizes a private cause of action by individuals "affected by any pattern or practice of telemarketing," and the Telephone Consumer Protection Act, 47 U.S.C. § 227(f)(1), authorizes civil actions brought by a state, or official agency designated by a state, for damages and injunctive relief against any person engaged in a pattern or practice of telephone calls or other transmissions to residents of the state in violation of the substantive sections of the statute. In any of these cases, if Congress had intended for a single violation to be sufficient for liability for the specified damages, then there would have been no reason to include the phrase "pattern or practice." That phrase must be read in the context of 12 U.S.C. § 2605(f) to reach its plain meaning.

■ Nevertheless, the phrase "for each such failure" also cannot be ignored. The general introductory language directs that a borrower who has suffered a violation of section 2605 is entitled to actual damages for each violation of the section. These damages are non-discretionary. Thus, if a plaintiff is able to prove both that there have been violations of section 2605 and that he has suffered actual damages as a result of such violations, then the plaintiff is entitled to recover the actual damages suffered due to each violation. The plaintiff is only entitled to additional damages under subsection (B) when he can establish that the defendant has engaged in a pattern or practice of noncompliance.

Neither party has addressed whether a pattern or practice of noncompliance in this context can be based on the actions of a defendant against a single individual or whether the plaintiff must first demonstrate that the defendant has violated the statute with respect to multiple individuals. Once

again, there are no cases construing the damages provisions of section 2605 in this or any other federal circuit. In the context of civil rights statutes, courts regularly interpret the phrase "pattern or practice" in such a way that looks at the defendant's conduct with respect to many individuals. *See, e.g., E.E.O.C. v. Shell Oil Company,* 466 U.S. 54, 72, 104 S.Ct. 1621, 80 L.Ed.2d 41 (1984) (in a Title VII employment discrimination case based on race, the EEOC should identify the groups of persons that he has reason to believe have been discriminated against). In *First National Bank of Council Bluffs, Iowa v. Office of the Comptroller of the Currency,* 956 F.2d 1456 (8th Cir.1992), the court considered "pattern and practice of violations" language in the context of the Truth-in-Lending Act and held that the Bank's nondisclosure of the composite interest rate, which involved over 700 violations against numerous individuals over two years, constituted a pattern or practice of violations.

Since the parties have not addressed either problem in any of their briefs, the court directs each side to provide the court with a brief memorandum discussing their views pertaining to the interpretation of this section in the context of this case not later than January 20, 1998.

At oral argument, defendants suggested that they would be able to file a motion for summary judgment relating to the mortgage foreclosure action contained in the counterclaim. This should be done as soon as possible and not later than January 20, 1998. This case has been pending for some time and for the benefit of all it should be addressed and brought to a conclusion. Plaintiff shall be given until February 27, 1998, to respond. Applications for extension of this scheduling order will not be favored.

### CONCLUSION

For the foregoing reasons, this court grants defendants' motion for partial summary judgment in part (Item 81), finding that plaintiff is not entitled to recover punitive damages, damages for personal injury, and damages for economic loss. The court will withhold decision on the $1,000 statutory damages problem until after the parties have filed their memoranda.

So ordered.