**In re Milos TOMASEVIC, Debtor.**

**No. 99–14375–8C3.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Feb. 20, 2002.

---

684

Larry Segal, Tampa, FL, for Washington Mutual Bank, F.A.

Terry Smith, Bradenton, FL, trustee.

## ORDER DENYING DEBTOR'S MOTION TO COMPEL ANSWERS AND FOR SANCTIONS

C. TIMOTHY CORCORAN, III, Bankruptcy Judge.

This case came on for a hearing on February 5, 2002, of the debtor's motion to compel answers and for sanctions (Document No. 98). The debtor filed the motion on July 2, 2001. In it the debtor seeks damages for Washington Mutual Bank's ("Washington Mutual" or "the bank") alleged violation of 12 U.S.C. § 2605(e)[1]

---

**1.** The debtor also cites 12 U.S.C. Regulation X, 24 C.F.R. § 3500.21 ("Regulation X"). The Department of Housing and Urban Development promulgated Regulation X as a means to implement the Real Estate Settlement Procedures Act. The provisions of 24 C.F.R

§ 3500.21(e) and (f) are identical in their language to 12 U.S.C. § 2605(e) and (f).

The debtor's claim for damages is more properly the subject of an adversary proceeding pursuant to F.R.B.P. 7001(1). The bank made no objection to the procedural posture of the matter. The court will accordingly

("Real Estate Settlement Procedures Act" or "RESPA") in connection with what the debtor characterizes as a "qualified written request" contained in his letter of February 21, 2001. This motion arises within the context of a bitter, contentious, and long-standing battle between the debtor and the bank. The court has now conducted a number of lengthy hearings of disputes between the debtor and the bank and, as a consequence, has become very familiar with the underlying issues.

## I.

On December 4, 2001, the court conducted a preliminary hearing of the motion to compel answers. The court subsequently entered a preliminary order on debtor's motion to compel answers (Document No. 135) that identified the narrow issues to be determined by the court. In that order, the court also bifurcated the damages issue from the others. The preliminary order directed the debtor to file a detailed itemization of the elements and items of damages that he claims were proximately caused by Washington Mutual's alleged violation of the statute. The preliminary order also directed Washington Mutual to file a response to the debtor's itemization of damages. Finally, the preliminary order scheduled a further hearing for February 5, 2002, to determine the legal sufficiency of the debtor's damage claim. In the meantime, Washington Mutual responded to the debtor's February 21, 2001, letter that started this discrete dispute and placed a copy of the response in the court file (Document No. 150).

determine the merits of the dispute in the procedural posture—a contested matter—the parties have framed. *See, e.g., In re Chapman,* 132 B.R. 132, 144 (Bankr.N.D.Ill.1991) [debtor's failure to file adversary proceeding not fatal].

In addition to conducting the February 5, 2002, hearing, the court has now carefully studied the debtor's amended itemization of damages [2] (Document No. 155) and Washington Mutual's responses (Document Nos. 151 and 156) together with the parties' oral and written legal arguments. As a consequence, the court determines that the debtor has failed to establish the legal sufficiency as to his claim for damages.

## II.

Section 6(f) of the Real Estate Procedures Act, 12 U.S.C. § 2605(f), sets forth the applicable damages that may be awarded to a borrower who has established a violation of Section 6(e), 12 U.S.C. § 2605(e). That section provides that:

Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:

(1) Individuals

In the case of any action by an individual, an amount equal to the sum of—

(A) any actual damages to the borrower as a result of the failure; and

(B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000.

A. *Punitive damages.*

■ The debtor seeks punitive damages in the amount of $1,575 for Washington Mutual Bank's "repeated reckless fraud in written documents and in court" (Document No. 155, ¶ 7). At the hearing, the

2. The debtor filed his first list of damages on January 7, 2002 (Document No. 148). At the February 5 hearing, the debtor conceded that Document No. 155 superceded the initial list of damages (Document No. 157, Tr. at 3, lines 9–12).

debtor stated that he calculated his punitive damages claim by adding together attorney's fees charged to him by Washington Mutual Bank in Proof of Claim No. 4 that related to earlier correspondence between the debtor and the bank and an earlier motion to compel (that the court subsequently denied) (Document No. 157, Tr. at 15–18). The debtor feels particularly aggrieved with those attorney's fees because he believes that they relate to the bank's long-standing actions in asserting that it had not misapplied a post-petition payment to his prepetition arrearage. The debtor contends that the bank's position as to this was incorrect or, in the debtor's words, "fraudulent."

Section 6(f) of the Real Estate Procedures Act, 12 U.S.C. § 2605(f), sets forth the applicable damages that may be awarded to a borrower who has established a violation of Section 6(e), 12 U.S.C. § 2605(e). This section, unlike other sections,[3] contains no provision for punitive damages.

The debtor argues that he is nevertheless entitled to punitive damages because "any reckless fraud which is of [an] outrageous nature is subject to punitive damages" (Document No. 157, Tr. at 19, lines 19–20). While it may be true that punitive damages are available upon an appropriate showing in the case of the common law tort of fraud, the debtor's claim is not a fraud claim. Instead, it is a statutory claim under the Real Estate Settlement Procedures Act. The debtor is therefore limited to the damages available under the statute which do not include punitive damages. Accordingly, the debtor is not entitled to punitive damages, and his claim for them is legally insufficient.

B. *Statutory damages.*

■ The debtor claims $1,000 in statutory damages pursuant to Section 2605(f)(1)(B), Title 12, U.S.C., (Document No. 155, ¶ 4). Section 2605(f)(1)(B) permits the court to award "additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of [Section 2605(e) ], in an amount not to exceed $1,000."

At the hearing, the debtor contended that statutory damages are appropriate in this case because Washington Mutual failed to answer his February 21, 2001, letter and "didn't do it repeatedly" (Document No. 157, Tr. at 14, lines 4–5). The debtor seeks the maximum allowed under the statute because the bank failed to respond to that letter "even when the legal action started, for a year and a half" (Document No. 157, Tr. at 14, lines 6–10). In other words, the debtor interprets the "repeated pattern or practice" provision of the statute to be satisfied if the bank "repeatedly" fails to respond to a single qualified written request over a lengthy period of time. The bank did respond on January 15, 2002 (Document No. 150).

In this case, the debtor alleges that he made a single qualified written request, that being his letter to the bank of February 21, 2001. If the debtor can make his case, the debtor would establish a single violation. In *Katz v. The Dime Savings Bank, FSB,* 992 F.Supp. 250, 258 (W.D.N.Y.1997), however, the court held that a single violation of the Real Estate Settlement Procedures Act is insufficient to establish "a pattern or practice" within the plain meaning of Section 2605(f)(1)(B). Because the debtor alleges only a single violation of the statute, the debtor is not entitled to statutory damages even if the debtor can establish that the bank failed to fulfill its obligations under the Real Estate Settlement Procedures Act by failing to

---

**3.** *See, e.g.,* RESPA Section 8(d), 12 U.S.C. § 2607(d) [damages include treble damages].

respond when it should have and by responding much later instead. The debtor's claim for statutory damages is therefore legally insufficient.

### C. *Actual Damages.*

The debtor claims $340.88 in actual damages for Washington Mutual's alleged violation of the Real Estate Settlement Procedures Act (Document No. 155, ¶¶ 1, 2, and 6). Section 2605(f)(1)(A) of Title 12, U.S.C., provides for the borrower's recovery of actual damages in the event he establishes a violation of the statute. The borrower carries the burden of persuasion as to damages. *Katz,* 992 F.Supp. at 254.

■ Actual damages are limited to economic pecuniary injury. *Id.* at 256. *Contra, Rawlings v. Dovenmuehle Mortgage, Inc.,* 64 F.Supp.2d 1156, 1167 (M.D.Ala. 1999) [borrower can recover for mental anguish]; *Johnstone v. Bank of America,* 173 F.Supp.2d 809, 814–16 (N.D.Ill.2001) [actual damages may include emotional distress]. Pecuniary injury includes out-of-pocket expenses. *Katz,* 992 F.Supp. at 256–57.

■ In other words, the plaintiff must establish that the economic injury was proximately caused by the bank's violation of the Real Estate Settlement Procedures Act. Thus, economic injury may include economic damages that flow from the bank's failure to respond to a qualified written request as required by the statute. *See, e.g., Rawlings,* 64 F.Supp.2d at 1163–64 [time spent away from employment while preparing correspondence to servicer, and expenses for copying and obtaining certified copies of correspondence recoverable if borrower can establish actual pecuniary loss]. Economic injury may also include damages that flow from the bank's failure to take action with respect to the borrower's account in response to a qualified written request. *See, e.g., Johnstone,*

173 F.Supp.2d at 816 [late fees and foreclosure attorney's fees charged to borrower were allowable actual damages where bank failed to correct error within 60 days]. To prove the latter type of economic damage, however, the borrower must establish that the bank made an error in the account that resulted in economic injury in addition to showing that the borrower made a qualified written request to which the bank failed to respond or take appropriate action as required by the statute.

### 1. *Interest for lost use of monies.*

■ The debtor claims $149.53 in interest for the lost use of monies that he alleges the bank untimely applied or misapplied to his account (Document No. 155, ¶ 1a and 2a).

■ Washington Mutual argues that the debtor is not entitled to this interest even if the monies were misapplied or not timely applied because those monies became the bank's property upon the debtor's remittance. The bank correctly states the law. "When a party deposits funds in a bank, the funds become the bank's property." *Wickham v. United American Bank (In re Property Leasing & Management, Inc.),* 46 B.R. 903, 908 (Bankr.E.D.Tenn. 1985).

■ If the bank misapplies or untimely applies a payment, the bank can be compelled to credit the debtor's payments in the correct manner required by the loan documents and to reverse or correct the improper application of those payments, including late fees. The correction of misapplied payments will make the debtor completely whole. Giving him interest in addition, therefore, would constitute an impermissible double recovery. The debtor's claim for $149.53 in interest is therefore legally insufficient under 12 U.S.C. 2605(f)(1)(A).

## 2. *Borrowing costs.*

■ The debtor also claims $100 as a "[c]ost of borrowing for added expenses" (Document No. 155, ¶ 6). At the hearing, the debtor explained that he calculated this claim by estimating his cost of borrowing money to buy gasoline to travel to court, to buy supplies to make photocopies, and to pay postage at the post office (Document No. 157, Tr. at 15, lines 7–19).

The cost of photocopies and postage would be compensable as actual damages if it is incurred in furtherance of seeking the bank's compliance with the Real Estate Settlement Procedure's Act and the debtor can establish a violation of that statute.[4] The debtor's costs of borrowing monies to pay these costs has too tenuous a connection, however, to fall within the ambit of actual damages proximately caused by a violation of the statute.

It further appears that a substantial portion of the underlying costs that occasioned the debtor's borrowing are not economic costs that flow from the debtor's out of court efforts to compel the bank's compliance with the Real Estate Settlement Procedures Act but instead relate to earlier court hearings of other matters.[5] For these reasons, the debtor cannot establish a claim for these borrowing costs.

## 3. *Additional interest.*

■ Finally, the debtor claims $91.35 in additional interest that he contends Washington Mutual charged as a consequence of payments that the bank allegedly untimely applied or misapplied to his account (Document No. 155, ¶ 1b and 2b).

Washington Mutual concedes that the debtor's claim for interest in the amount of $91.35, if proven, would be compensable to the debtor as actual damages. Washington Mutual argues, however, that the debtor will be unable to establish these damages because the bank did not charge additional interest on the debtor's loan. Washington Mutual points out that the court heard testimony on this point during the evidentiary hearing of the debtor's objection to Washington Mutual's claim conducted in June 2001 (Document No. 157, Tr. at 26, lines 7–17).

A portion of the June 2001 hearing related directly to the way in which the bank administers the debtor's loan (Document No. 92, Tr. at 6–76). Anthony Evans, a bankruptcy default specialist employed by Washington Mutual, testified on direct and cross examination during the June 2001 hearing that the debtor's mortgage is an amortized loan that accrues interest on a predetermined schedule that is not affected by the date on which any particular payment is credited to the loan (Document No. 92, Tr. at 68, lines 12–24). This testimony was unrebutted at that hearing, and the court found Mr. Evan's testimony to be credible as to other facts (Document No. 188, at 28). The documentary evidence was also consistent with this testimony.

The debtor has the burden of persuasion as to the $91.35 that the debtor claims as actual damages for additional interest charged. The debtor's burden of persuasion to overcome the evidence established at the June 2001 hearing, assuming it is offered by the bank in this matter, would obviously be very heavy. For this reason, the court questioned the debtor at length

---

4. The court notes that the debtor has made no claim for photocopies or postage in sending a written qualified request but instead has claimed those costs only in connection with court proceedings. *See* Section II.D.3., *infra.*

5. Those hearings are unrelated to the pending hearing other than that they are part of the fundamental dispute between the creditor and the debtor as to the bank's administration of the debtor's mortgage loan.

at the February 5 hearing as to the evidence that the debtor could offer to establish that the bank had in fact charged him additional interest when it allegedly misapplied or untimely applied payments (Document No. 157, Tr. at 33–43).

The debtor conceded that the loan is an amortized loan (Document No. 157, Tr. at 38, lines 7–8). The debtor contended, however, that the untimely application or misapplication of his payments caused the bank to credit his account late and that the loan fell into arrears as a consequence (Document No. 157, Tr. at 38, lines 7–17).[6] The debtor further argued that the "principal balance accrues interest automatically through the computer" and thus a tardy credit to principal results in the accrual of additional interest (Document No. 157, Tr. at 37, lines 11–24).

The court pointed out to the debtor that his factual understanding appeared to be contrary to the testimony and evidence at the June 2001 hearing and again asked the debtor what evidence he would offer to support his claim that the bank charged him additional interest and to contravene the evidence established at the June 2001 hearing (Document No. 157, Tr. at 36–37). The debtor stated that he would rely upon the bank's own "documents" and "evidence they supplied to me" that the debtor had placed in evidence at the June 2001 hearing (Document No. 157, Tr. at 37, lines 6–12, and at 39, lines 1–2). On their faces, these documents do not reflect any charge of additional interest.

It is apparent that the debtor has no independent evidence to substantiate his claim that he was charged additional interest. Instead, it appears that the debtor intends to make argument as to the credibility and interpretation of the evidence

and testimony already developed at the June 2001 hearing (Document No. 157, Tr. at 37–38), which plainly is contrary to the debtor's position. Because the debtor has no evidence to present to the court to support his claim for interest and because all of the evidence is to the contrary, the debtor cannot carry his evidentiary burden. Accordingly, the court determines that the debtor cannot establish a claim for actual damages. In these circumstances, the court believes that conducting an evidentiary hearing on this point would be an unproductive use of the parties' and the court's resources.

### D. Court costs.

■ The debtor seeks costs of this action in the amount of $237.12 (Document No. 155, ¶¶ 3, 5). Section 2605(f)(3), Title 12, U.S.C., provides that the borrower is entitled to costs if successful. "The term 'costs' is a term of art that refers solely to those items that are properly taxed as costs." James Wm. Moore, *Moore's Federal Practice*, ¶ 1920.2[1] (3d ed. rev.2000). Compensable costs include court fees, fees paid to witnesses (including travel costs), expenses of photocopying and the production of documents, and expenses of transcription. *Id.*

### 1. Transportation costs.

■ The debtor seeks $105 in transportation costs (Document No. 155, ¶ 3) for expenses he incurred in coming to court to attend hearings and traveling to make photocopies (Document No. 157, Tr. at 12, lines 5–25). By the debtor's own proffer, a substantial portion of his transportation costs are associated with earlier

---

6. The court pointed out that the debtor had made no claim for late fees for the period during which he claimed the bank was un-

timely applying or misapplying his payments (Document No. 157, Tr. at 39, lines 21–23).

hearings unrelated to this matter (Document No. 157, Tr. at 10, lines 15–25).

In addition, transportation costs of the debtor are only compensable if the debtor is a witness. *Id.* The court has not to date conducted an evidentiary hearing of this matter, and no witness has yet testified. Further, transportation costs to make photocopies are not compensable at all. *Id.* The debtor is therefore not entitled to transportation costs.

### 2. *Parking tickets.*

█ The debtor also seeks reimbursement for parking tickets in the amount of $31.50 that he incurred while attending court hearings (Document No. 155, ¶ 3). It is unclear whether these parking tickets were incurred by the debtor while attending hearings related to this matter or earlier unrelated hearings. In any event, parking tickets are not compensable costs. *Id.* The debtor is therefore not entitled to parking ticket costs.

### 3. *Photocopying, postage, and telephone costs.*

█ Finally, the debtor seeks approximately $85.52 for photocopying and postage and $19.10 for photocopying and telephone calls (Document No. 155, ¶¶ 3 and 5). At the hearing, the debtor stated that he calculated his claim for photocopying costs at $2.62 per page (Document No. 157, Tr. at 10, lines 1–3). Although Washington Mutual concedes that photocopy costs incurred in connection with this motion would be compensable costs, if costs were to be awarded, it argues that $2.62 per page is excessive.

In addition, by the debtor's own proffer, all of the $19.10 claim and a portion of the $85.52 claim relates to costs that the debtor incurred in connection with earlier unrelated hearings (Document No. 157, Tr. at 10, lines 1–21, and at 14, lines 13–23). It appears, therefore, that the debtor would be able to establish court costs in some amount much less than $85.52.

More importantly, the debtor's ability to claim costs of this action is predicated upon a successful outcome on the merits of his claim against Washington Mutual. In the absence of a viable claim for economic damages, the debtor is not entitled to costs even if he establishes that Washington Mutual violated the Real Estate Settlement Procedures Act.

### III.

For the reasons stated above, the court determines as a matter of law that the debtor is not entitled to $2,980.13 of the $3,157 he seeks in damages on account of Washington Mutual's alleged violation of the Real Estate Settlement Procedures Act.[7] The court further determines that, although the debtor has established that $91.35 of his claim falls within the ambit of actual damages compensable under the statute, he cannot sustain his evidentiary burden as to proving the damages sought. Finally, the court determines that the debtor has established that his claim for expenses for photocopying and postage are compensable court costs in some amount less than $85.52, but these costs cannot be awarded in this matter because the debtor cannot establish a claim for damages under the Real Estate Settlement Procedures Act.

---

**7.** The court calculates this amount by adding together the debtor's punitive damage claim in the amount of $1,575, the debtor's statutory damage claim in the amount of $1,000, the debtor's interest claim in the amount of $149.53, the debtor's cost of borrowing claim in the amount of $100, the debtor's cost claim in the amount of $19.80, and the transportation and parking fines portion of the debtor's cost claim in the amount of $136.50.

For these reasons, the court concludes that the debtor's claim of damages and costs arising from Washington Mutual's violation of the Real Estate Settlement Procedures Act must fail. Because the debtor cannot establish damages under the Real Estate Settlement Procedures Act, the court need not consider the issue of whether Washington Mutual violated the statute. The debtor's motion to compel and for sanctions (Document No. 98) is therefore denied.