187 So. 716
### POWELL et al. v. EDWARDS.
### 6 Div. 455.

Supreme Court of Alabama.

March 16, 1939.

Rehearing Denied April 13, 1939.

Erle Pettus, of Birmingham, for appellee.

BOULDIN, Justice.

Action for damages for injuries to lands by the diversion of surface waters.

The railroad line operated by appellants was constructed about 1903. It runs east and west. The lands lying north of the railroad slope toward the south. Appellee's lands lie south, slope off into level lands, and are subject to a natural servitude for the drainage of surface waters from the lands to the north.

The railroad, adjacent to appellee's lands, is upon a fill or embankment. Surface waters coming down from the north were, until recently, intercepted by this embankment and diverted through a ditch on the north side of the railroad to a natural channel or branch. In 1935 and 1936, appellants, in the operation of the railroad, opened two culverts through this embankment. A road-crossing was also maintained by appellants. The fill or ramp of this roadway crossing the ditch on the north side of the railroad had an opening or culvert to allow a free flow of these waters down the ditch on the north side of the railroad. A smaller culvert was put in at this road-crossing. The occasion for this, as evidence for defendant tended to show, was that the surface waters pouring in from the north, increased by clearing up of lands, tended to wash away the embankment, and at times break over and wash away the ballast from the railroad track, thus increasing the cost of maintenance, etc.

Cabaniss & Johnston and Gerry Cabaniss, all of Birmingham, for appellants.

To relieve this situation the culverts were cut under the railroad to carry a portion of this water and the other culvert so altered as to lessen the flow down the ditch on the north side. Plaintiff's evidence is the water is thus impounded and forced through the culverts onto plaintiff's land with greater force and volume.

The cause was tried on count 5 alleging the constructions of these culverts and an unlawful diversion of surface water through them, washing away the soil near such openings, depositing debris on the lower lands and flooding them with surface water, standing in ponds, etc., to the injury of plaintiff's property.

The theory of appellants is that all this water flowed by nature down upon plaintiff's lands; that these culverts merely restored the natural flow which the railroad embankment had intercepted; that plaintiff has no cause of action for discontinuance of artificial barriers relieving his lands of their servitude.

The questions raised on this appeal relate to the refusal of the affirmative charge for defendant, or a charge limiting recovery to nominal damages. We see no conflict in the evidence to the effect that all this surface water would flow upon plaintiff's lands if the railroad fill had never existed.

■ The mere fact that a lower proprietor has had the benefit of gratuitous improvements diverting the natural flow of waters away from his lands certainly confers on him no legal right to have such status quo maintained for his benefit. Brainard v. Chicago, R. I. & P. R. Co., 151 Iowa 466, 131 N.W. 649; 67 C.J. 875.

In case of a permanent structure, such as a railroad embankment, maintained for more than twenty years, in this case more than thirty years, during which time the plaintiff purchased the property and made some improvements thereon, other questions, such as prescription or equitable estoppel, may arise. But they were not considered in the lower court, nor here presented, and are not considered.

We may concede that the evidence, at least the weight of it, supports the contention that these culverts were at the points where most water entered the lower premises when this railroad was constructed.

■ But this, by no means, prevents a fair inference from the testimony that the installation of these culverts after more than thirty years caused much greater damage, washing away the soil and flooding low lands, than if the natural flow had never been interrupted. Courts and juries may take notice of the well known processes of nature, observable from year to year. When flood waters from higher ground gather into and form depressions or channels they carry much solid matter to be deposited from time to time as soon as the water eddies upon the low lands. In this way nature tends to provide drainage; water seeks and finds an outlet as the lower lands are raised by silt deposits. There is evidence that this water carried such matter. All this silt formation has been stopped while the waters were diverted by the embankment. When, as claimed by defendant, the flood waters are multiplied by clearing up the hill side lands north of the railroad, and this water is turned through these culverts onto the lower lands as they were left thirty years ago, the jury was warranted in finding these waters flooded and injured the lands, as testified by plaintiff's witnesses, far more than if left to nature's processes in the disposition of these waters.

Another ground upon which appellants insist the affirmative charge was due is the statute of limitations of one year.

■ The action seeks recovery in one action for the injury to the market value of the lands, the permanent injury. Admittedly these culverts were installed more than one year before suit brought. Appellants' view is that the one year statute applicable to such actions began to run from the time these culverts or the last of them was constructed. The recovery includes depreciation in market value to the time of suit brought December, 1937. There was evidence that the flooded conditions due to heavy rains of 1937 caused a depreciation of the market value during the one year period before suit brought. The trial court, in his instructions, limited the recoverable damages to depreciation in value during that period.

We find no error in refusal of the affirmative instructions, or in refusal of the charge limiting recovery to nominal damages.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.