This is an appeal from a jury verdict in favor of plaintiffs, the Jacksons, in a suit they brought against the City of Mobile to recover for damages to their real and personal property when a drainage system overflowed and flooded their property. We affirm.
The Jacksons' home is located in a subdivision off the Dauphin Island Parkway in Mobile. Their property fronts a service road which was constructed by the city. This service road has a drainage ditch running between it and Dauphin Island Parkway. The service road, the drainage ditch, and Dauphin Island Parkway parallel their property. Their property is located below the grade of the Parkway, service road, and ditch. At the time the Jacksons purchased their property, the adjacent property was undeveloped and was on the same grade as their own. Waters from the service road ran down the side of their property, collected with surface waters along the rear property line and flowed along the rear property line toward Robinson Bayou.
In 1976, the City of Mobile issued a permit for construction on the adjacent property. The permit specified that the property was to be elevated to a grade above the *Page 646 
Jacksons' property. The developer was required, however, to execute an indemnity agreement to indemnify the city for damages to the property which might occur from construction in a flood-prone area.
Construction commenced approximately three years after the enactment of a city ordinance which regulated development of property in flood-prone areas.
The Jacksons' property was "grandfathered" out of the 1973 ordinance — as was all pre-existing development — because of the overwhelming financial burden that would be imposed if existing structures had to be "raised" to new finished floor levels. To obtain the requisite finished floor elevation, the developer brought in fill dirt, which filled in the natural swale behind the Jacksons' property and elevated the adjacent land three feet higher than the Jacksons' property. This caused the water to be dammed up rather than flow along the natural backyard drainage swale. Thereafter, duplexes were constructed on the adjacent property. The Jacksons then began to experience the ponding of water in their backyard.
The Jacksons alerted the Public Works Department of the City of Mobile, and improvements were made along the service road in front of the Jacksons' property consisting of an earthen berm running on the west side of the service road and the ditch fronting Dauphin Island Parkway. This was done to increase the storage capacity of the ditch. After installing the berm, the city cut slits or weirs into the berm. The berm is higher than the Jacksons' property. On April 13, 1980, waters flowing from the ditch and service road entered the Jackson home. The water caused substantial damage to the structure and to personal property located in the house.
The Jacksons vacated the premises and lived in a camper parked in their backyard. After the April 13, 1980, event, Mr. Jim Chapman, Assistant City Engineer, as a result of calls by Mr. Jackson, viewed the Jackson property and recommended that the two culverts be changed to one 48-inch culvert and that a 36-inch pipe be installed to the rear of the property to handle the waters running along the rear of the Jackson property.
These recommendations were not acted upon before May 17, 1980, when water again entered the Jackson home and caused further damage.
The Jacksons submitted a claim dated August 26, 1980, itemizing damage to their home and its contents at $19,000. This figure did not include damages for inconvenience and mental anguish. On January 26, 1981, the Jacksons filed suit against the City of Mobile for the water damage to their property. The jury returned a verdict in their favor in the amount of $58,144 and the city appeals here, raising five issues.
 I
The first issue raised is whether the Jacksons timely filed their notice of claim and their subsequent lawsuit pursuant to Code 1975, § 11-47-23 and § 6-2-39, respectively.
The city cites Timmons v. City of Prichard, 445 So.2d 895
(Ala. 1984), and Burge v. Jefferson County, 409 So.2d 800 (Ala. 1982), to support its proposition that the Jacksons should have filed their notice of claim and their lawsuit six months, and one year, respectively, after the completion of the duplexes when the water started to pool on their property and, thus, when the damage first commenced.
In Timmons, landowners brought an action seeking to enjoin and restrain the City of Prichard from maintaining, or permitting the maintenance of, the sewage system in such a manner as to permit it to overflow onto their property. The sewage line was installed in May 1979, and because plaintiffs' suit to enjoin a permanent, unabatable nuisance was not filed until 1982, this Court held that the suit was untimely because "[n]either a claim nor the suit was filed within the six-month period prescribed by § 11-47-23, Code 1975."
In Burge, plaintiff complained that defendant filled in a drainage ditch and thereby *Page 647 
increased the flow of water on plaintiff's property, causing flooding. Defendant filled in the ditch in 1964 and 1965. Suit was instituted in 1977. Plaintiff contended that the amount of water was "relatively insignificant until 1970" and that it was "not until 1972 through 1976" that the water problems became substantial. Id. at 802. This Court held that plaintiff's nuisance theory was governed by the one-year statute, and further, that plaintiff's claim was time barred.
Based on the facts presented, we must decide when the statutes of limitations commenced to run in this case. Pursuant to the above case law, it appears that if the construction of the duplexes created a permanent unabatable nuisance and was the sole cause alleged for the damage complained of here, the Jacksons filed their notice of claim and their lawsuit too late. Here, however, the Jacksons also allege that the flooding was a result of negligent design and maintenance of the drainage system. In addition, no legal cause of action arose when the construction of the duplexes was completed. This Court addressed a similar problem in Bradley McWhirter, Inc. v.Conklan, 278 Ala. 395, 178 So.2d 551 (1965).
The Bradley court thoroughly reviewed this area of the law, as follows:
 "In [City of Anniston v. Isbell, 273 Ala. 696, 144 So.2d 18 (1962),] we held that the one-year statute began to run at the time of the construction of the storm sewer rather than at the time the plaintiff's property was damaged by an overflow which occurred some four years after the construction of the sewer because the storm sewer constituted a permanent nuisance. In support of that holding we cited the case of Goodyear Tire Rubber Co. v. Gadsden Sand Gravel Co., 248 Ala. 273, 27 So.2d 578. See City of Huntsville v. Miller, 271 Ala. 687, 127 So.2d 606. In the Goodyear Case, supra, we expressly declined to discuss Goodyear's insistence that under the evidence it was entitled to the affirmative charge on each count because of the bar of the statute of limitations of one year. But the opinion contains these statements: `While the cause of action for a permanent nuisance arises on construction of the nuisance,' and `The statute runs from the time of the construction of the permanent nuisance but runs from the infliction of the injury when the nuisance is abatable.' (248 Ala. 278, 27 So.2d 582.) The quoted statements were made in the treatment of Goodyear's insistence that each count of the complaint was subject to demurrer because in each of them separate and distinct causes of action had been joined. Those statements were used to point out that different statutes of limitations were involved as to the different causes of action set up in each count.
 "In support of the statements to the effect that the statute of limitations begins to run from the time of the construction of the permanent nuisance, we cited the case of Harris v. Town of Tarrant City, 221 Ala. 558, 130 So. 83. But the Harris case, supra, does not support that statement. It does hold that when a city in the exercise of its duty adopts a system of drainage to care for rainwater and constructs storm sewers or ditches for that purpose, the system will be treated as of such character as to be embraced in § 235 of the Constitution of this state and cannot ordinarily be abated; that when a suit is so framed as to claim damages for the construction of the system, the plaintiff is to be compensated as for a permanent injury and damages are to be awarded in solido. But in the Harris Case, supra, we were not concerned with a plea of the statute of limitations and there is no language in the opinion to the effect that the statute of limitations begins to run from the time of the construction of a permanent nuisance. Nor does the case of City of Huntsville v. Miller, 271 Ala. 687, 127 So.2d 606, contain any such language. It was probably cited in City of Anniston v. Isbell, supra, because it quotes at length from Harris v. Town of Tarrant City, supra. *Page 648 
 "Aside from City of Anniston v. Isbell, supra, and Goodyear Tire Rubber Co. v. Gadsden Sand Gravel Co., supra, no case has come to our attention where this court has said, in effect, that the statute of limitations begins to run from the time of the construction of a permanent nuisance, irrespective of the fact that the act which caused the damage did not occur until after the statute of limitations had run from the time of the construction of the alleged nuisance.
 "We held to the contrary in Powell v. Edwards, 237 Ala. 572, 187 So. 716, decided in 1939. That was an action for damages for injuries to lands by the diversion of surface waters caused by the installation of culverts in or under a railroad fill or embankment. The receivers for the railroad contended that they were entitled to the affirmative charge because the culverts had been installed more than one year prior to the date of injury or damage. We affirmed the action of the trial court refusing the affirmative charge requested by the receivers, saying in pertinent part as follows:
 "`The action seeks recovery in one action for the injury to the market value of the lands, the permanent injury. Admittedly, these culverts were installed more than one year before suit brought. Appellants' view is that the one year statute applicable to such actions began to run from the time these culverts or the last of them was constructed. The recovery includes depreciation in market value to the time of suit brought December 7, 1937. There was evidence that the flooded conditions due to heavy rains of 1937 caused a depreciation of the market value during the one year period before suit brought. The trial court, in his instructions, limited the recoverable damages to depreciation in value during that period.
 "`We find no error in refusal of the affirmative instructions, or in refusal of the charge limiting recovery to nominal damages.' (237 Ala. 573, 187 So. 717.)
 "In Savannah, Americus Montgomery Ry. v. Buford, 106 Ala. 303, 17 So. 395, Buford sued the railroad to recover damages for injury to his land by reason of the overflow of surface water thereon, which was alleged to have been caused by the construction by the defendant of its railway across Buford's land. Among other pleas the defendant filed a plea of the statute of limitations of one year. Mr. Chief Justice Brickell, writing for the court, on the question presented by the plea of the statute of limitations said, in part, as follows:
 "`The statute of limitations to which the action is subject is subdivision 6, § 2619, of the Code [now subdivision 5 of § 26, Title 7, Code 1940], which reads: "Actions for any injury to the persons or rights of another, not arising from contract, and not being specifically enumerated," must be commenced within one year after the cause of action accrued. * * * The roadbed and embankment are permanent and continuous structures; and if their erection had given the plaintiff a cause of action, and then all the damage which could have resulted had resulted, the statute of limitations would have commenced to run from the time of their completion. But if the thing complained of is not necessarily injurious or is not an invasion of the rights of another, of itself affording no cause of action, then whatever of legal injury may result from it furnishes a cause of action accruing when the injury occurs, and then the statute of limitations commences to run * * *. The error of the instructions by the defendant as to the statute of limitations lies in the hypothesis that the construction of the embankment and roadbed gave the plaintiff a cause of action, and that such was the cause of action averred in the complaint. The embankment and roadbed were lawful structures, lawfully erected, and their construction was not an invasion of any right of the plaintiff, and furnished her no cause of *Page 649 
action. The legal injury to her, which gave her a cause of action, was coincident with the overflow of her lands, caused by the embankment and roadbed, and it is from the happening of the injury the statute of limitations commenced to run.' . . .
 "We are constrained to the conclusion that our holding in City of Anniston v. Isbell, supra, and our statements or observations in Goodyear Tire Rubber Co. v. Gadsden Sand and Gravel Co., supra, to the effect that in actions brought to recover damages for injury to land which results from the overflowing of plaintiff's property due to the construction of a sewerage or drainage system, the statute of limitations is to be treated as having begun to run from the time of the construction of the system, are erroneous and will not be followed."
278 Ala. at 395, 178 So.2d at 554-55.
Assuming the jury found that the buildup of the adjacent property caused the flooding, we find that, based on the facts presented here, the Bradley case must control our disposition of this case. Here, the construction itself did not create a cause of action and thus, whatever legal injury resulted from the construction created a cause of action when the injury occurred, and that is when the statute began to run. The injury complained of by the Jacksons occurred on April 13, 1980, and May 17, 1980, the dates the water came into their home. Their notice of claim was filed on August 26, 1980, and their lawsuit was filed on January 26, 1981.
In addition to the nuisance theory, the plaintiffs also allege that the flooding was a result of negligent design and maintenance of the drainage system. Regardless of which theory the jury utilized to find in favor of the plaintiffs, we must conclude that the present cause was timely initiated and is not barred by the statute of limitations.
 II
Next, the city cites Rich v. City of Mobile, 410 So.2d 385
(Ala. 1982), to support its proposition that it is substantively immune from suit in this case. In Rich, homeowners sued the city, alleging that a building inspector negligently inspected, or negligently failed to inspect, sewer lines connecting plaintiffs' residence to the main system. Rich
created a narrow exception to the rule of general liability for municipalities in situations in which the public policy considerations of a city's paramount responsibility to provide for the public safety, health, and general welfare outweighed the reasons for the imposition of liability on the municipality. This exception to the general rule of liability, however, is to be applied only in "those narrow areas of governmental activities essential to the well-being of the governed, where the imposition of liability can be reasonably calculated to materially thwart the City's legitimate efforts to provide such public services." Rich, 410 So.2d at 387.
We find that Rich is not applicable to the case at hand.
In Kennedy v. City of Montgomery, 423 So.2d 187 (Ala. 1982), this Court held that pursuant to Code 1975, § 11-50-50, municipalities are authorized to construct and maintain drainage systems, and, while a municipality is not required to exercise this authority, once it does so, a duty of care arises and a municipality may be liable for damages proximately caused by its negligence.
We find that the liability for negligent design or maintenance of drainage systems is analogous to that involved in the construction and maintenance of streets, alleys, or public ways or buildings, and, thus, that the city is not immune in this case.
 III
Third, the city contends that there was insufficient evidence to support a finding of negligence. We disagree.
It is well settled in this state that a jury's determination of factual issues will not be disturbed unless it appears plainly and palpably wrong. Southeast Alabama *Page 650 Broadcasting Co. v. Farrell, 434 So.2d 756 (Ala. 1983). Having reviewed the record, we find ample evidence from which the jury could have determined that the city was negligent in either design or maintenance.
 IV
Fourth, the city argues that the pattern jury charge on the act-of-God defense is misleading and prejudicial to the city in defending flood suits. See Alabama Pattern Jury Instructions:Civil § 28.18.
We find that the Alabama pattern jury charge on the act-of-God defense is a correct statement of law. As this Court held in Bradford v. Stanley, 355 So.2d 328 (Ala. 1978), the act-of-God defense applies only to events in nature so extraordinary that the history of climatic variations and other conditions, in particular localities, affords no reasonable warning of them. Citing Gulf Red Cedar Company v. Walker,132 Ala. 553, 31 So. 374 (1902), the Court went further, to state that it was a jury question as to whether the rainfall was so unprecedented as to be deemed an act of God, and that the jury's determination would not be disturbed unless it appeared plainly and palpably wrong.
The holding in Bradford is dispositive in the instant cause, as the act-of-God charge given by the court in this case properly instructed the jury that the term "act of God" applied to events so extraordinary that the history of climatic conditions and variations in a particular locality would afford no reasonable warning. In fact, this wording, verbatim, was contained in the act-of-God charge. Additionally, there is conflicting testimony in the record as to the classification of the April 1980 and May 1980 rains, and it was for the jury to determine whether the rainfall was so unprecedented as to be deemed an act of God; that determination, along with the jury's verdict in this cause, will not be disturbed unless plainly and palpably wrong. Thus, we find that the act-of-God charge given by the trial judge was proper, and the jury's determination in regard to the act-of-God charge will not be altered, since it is supported by the record.
 V
Finally, the city contends that the Jacksons should be limited to the amount sought in their notice of claim. We disagree.
In Perrine v. Southern Bitulithic Company, 190 Ala. 96, 98,66 So. 705 (1914), this Court held as follows:
 "The claim here sued on was presented as required by section 1275 of the Code, except it was for only $3,000, while the amount claimed in the complaint was $5,000. However, we do not think that this was such a variance as to entirely defeat a recovery. The recovery should be limited to the amount claimed in the presentation. There is no doubt that the claim for damages for the identical cause of action was presented and that the city then denied all liability, and does now deny all liability. No possible injustice has been done, or can be done, the city, if the liability is limited to the amount originally claimed. Moreover, the exact amount of damages in cases like this cannot be easily ascertained, and the court will not hold the parties to the same accuracy as to the amount that it will require where the damages are liquidated or easily ascertained. In fact, it is often impossible to know, even at the trial, what the exact amount of damages will be, even if all the facts be admitted. The law is reasonable, and does not require the doing of impossible or useless things. In some cases the only measure of damages is `such as the jury may assess.' The plaintiff, therefore, could not know in advance what this amount would be. To hold that the plaintiff, in all cases, must name the exact amount of his claim, and cannot recover at all if he claims in his complaint, or the jury find, more or less than this exact amount, would prevent a recovery in many cases, even when the plaintiff did all that could *Page 651 
be done, and did so with all proper diligence."
190 Ala. at 98-99, 66 So. at 706.
In this case, Cleve Jackson filed a claim with the City, which read, in part, as follows:
 "I have had estimates made of the damage incurred and the damages to my home and its contents total $19,000.00. These damages consist of floor repair, replacing sheetrock and vinyl flooring, replacing paneling and carpet, replacing damaged appliances, and loss of furniture and clothing. This figure does not cover my inconvenience and mental anguish that my family and I have suffered since the home we lived in was flooded." (Emphasis added.)
We find, therefore, that Jackson claimed an amount in excess of $19,000 in his original claim filed with the City. In their complaint, the Jacksons claimed $150,000 as total damages. Under the facts of this case, we do not believe the Jacksons would be limited to a recovery of $19,000, because in Mr. Jackson's original claim, he notified the City of Mobile that the $19,000 figure "[did] not cover my inconvenience and mental anguish that [his] family and [he had] suffered since the home [they] lived in was flooded." We find no error in the trial court's judgment awarding the Jacksons $58,000 based upon the jury verdict in the Jacksons' favor in this amount.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ.