**Ray D. RAWLINGS, et al., Plaintiffs,**

v.

**DOVENMUEHLE MORTGAGE, INC., et al., Defendants.**

**No. Civ.A. 97–D–1581–N.**

United States District Court,
M.D. Alabama,
Northern Division.

June 23, 1999.

C. Knox McLaney, III, Montgomery, AL, Angela L. Kimbrough, Tuscaloosa, AL, for plaintiffs.

Daryl L. Masters, Montgomery, AL, Gregory D. Crooslin, Michael B. O'Connor, Montgomery, AL, Peter S. Fruin, Montgomery, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court are two motions for summary judgment:

(1) Plaintiffs filed a Motion For Summary Judgment ("Pls.' Mot.") on April 8, 1999. Defendant Dovenmuehle Mortgage, Inc. ("Defendant") filed a Response To Plaintiffs' Motion For Summary Judgment ("Def.'s Resp.") on April 28, 1999.

(2) Defendant filed a Motion For Partial Summary Judgment ("Def.'s Mot.") on May 10, 1999, together with a Memorandum Brief In Support Of Defendant's Motion For Partial Summary Judgment ("Def.'s Memo."). Plaintiffs filed a Response To Defendant Dovenmuehle Mortgage, Inc.'s Motion For Summary Judgment ("Pls.' Resp.") on May 26, 1999. Defendant filed a Reply To Plaintiffs' Response To Dovenmuehle Mortgage's Motion For Summary Judgment ("Def.'s Reply") on June 2, 1999.

After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that both Plaintiffs' Motion For Summary Judgment and Defendant's Motion For Partial Summary Judgment are due to be granted in part and denied in part.

## JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction over this action, pursuant to 12 U.S.C. § 2605 and 28 U.S.C. § 1331. The Parties do not contest personal jurisdiction or venue.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing Fed.R.Civ.P. 56(c)).

The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the

court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548 (citing Fed. R.Civ.P. 56(c)). The mechanics of satisfying the initial burden vary, however, depending upon which party, the movant or the nonmovant, bears the burden of proof at trial. *See Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993) (detailing the nature of the parties' responsibilities when preparing or defending against a motion for summary judgment).

Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (citing Fed.R.Civ.P. 56(e)). In meeting this burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348; *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

**FACTUAL BACKGROUND**

Plaintiffs Ray Rawlings ("Rawlings") and Christopher Powers ("Powers") purchased a home on October 4, 1991, initially financed by Molton, Allen & Williams. (Compl.¶¶ 7, 8.) In 1994, the loan servicing was transferred to GE Capital Mortgage Services, Inc. ("GE Capital"). (*Id.* ¶ 8.) On March 12, 1997, GE Capital informed Plaintiffs that the servicing rights for their loan had been transferred to Defendant. (Pls.' Mot.Ex. A.) The letter from GE Capital stated that the effective date of said transfer was April 1, 1997. (*Id.*) On April 14, 1997, Defendant sent Plaintiffs a correspondence informing them that their mortgage payment was due in the amount of $1,735.80 for March 1, 1997 through the end of April. (Rawlings Aff. at 2.)

Plaintiffs claim that, on April 25, 1997, Plaintiff Rawlings mailed a letter to Defendant, informing Defendant that the March payment had been timely made to GE Capital. (*Id.* at 3.) Enclosed with said letter were copies of canceled checks to demonstrate that the April 1997 payment had been made to Defendant and the January, February, and March 1997 payments had been made to GE Capital. (*Id.* at 3.) Defendant contests whether such letter was ever sent to Defendant, claiming that it never received said letter. (Def.'s Resp. at 3.)[1]

On June 6, 1997, Defendant sent Plaintiffs both a letter informing them that they owed late charges of $38.20 and a Notice of Default. (Rawlings Aff. at 3.) Plaintiff Rawlings responded to Defendant by letter dated June 25, 1997. With the letter, Plaintiff Rawlings enclosed copies of checks to demonstrate that the January through March 1997 payments had been made to GE Capital and that all payments effective April 1997 had been made to Defendant. (*Id.* at 3.) Plaintiff Rawlings also

---

**1.** The court notes that no reference to the April 25, 1997 letter was made in Plaintiffs' Amended Complaint. Further, Plaintiffs have been unable to provide a copy of said letter, stating that said letter "is unretrievable due to a computer crash." (Pls.' Resp.Ex. A.) As detailed below, *see* § I.A., infra, the court finds that a material issue of fact exists concerning whether Plaintiffs sent the April 25, 1997 letter to Defendant.

included a copy of his account history with GE Capital. (*Id.*) In said letter, Plaintiff Rawlings requested that "this matter be corrected promptly and a letter mailed to [him] stating that such has been corrected." (*Id.*) At approximately the same time, Plaintiff Rawlings contacted Defendant to request a copy of his loan history. (*Id.* at 2.) Defendant sent Plaintiffs a Payment History on July 26, 1997; however, said Payment History was not for Plaintiffs, but for other persons. (*Id.* at 3.)

Thereafter, by telephone conversation with Defendant, Plaintiff Rawlings requested that Defendant contact GE Capital to try to remedy any misapplied payments. (Rawlings Dep. at 36–37.) Defendant told Plaintiff Rawlings that it did not handle such matters and that he should contact GE Capital himself. (Rawlings Aff. at 2.) On August 4, 1997, Defendant sent Plaintiffs another letter regarding their loan being in default. (*Id.* at 4.) Then, on August 12, 1997, Defendant sent Plaintiffs another Default Notice. (*Id.*)

On August 26, 1997, Plaintiffs' attorney sent a letter to Defendant, enclosing previous correspondence from Plaintiff Rawlings to Defendant as well as copies of Plaintiffs' canceled checks and Plaintiffs' account history with GE Capital. (Rawlings Aff. at 4.) In said letter, Plaintiff's attorney requested that Defendant contact him "to rectify the matter or he would have no choice but to file suit." (Rawlings Aff. at 4.)

On September 3, 1997, Defendant sent Plaintiffs a notice of their loan being in default. (Rawlings Aff. at 4.) Again on September 8, 1997, Defendant sent Plaintiffs a notice of their loan being in default. (Rawlings Aff. at 4.) On October 6, 1997, Defendant sent Plaintiffs a letter regarding late charges of $152.80, as well as a notice that their loan was in default. (Rawlings Aff. at 4.) On October 7, 1997,

Defendant sent Plaintiffs another Notice of Default. (*Id.*)

On October 24, 1997, Plaintiff Rawlings sent a letter to GE Capital, requesting that GE Capital verify to Defendant that all payments were timely made for the January, February, and March 1997 loan payments. (*Id.*) On November 6, 1997, Defendant sent Plaintiffs another Notice of Default. (*Id.* at 5.) On November 7, 1997, GE Capital sent Plaintiffs a letter informing them that their check # 5019, dated March 15, 1997, had been misapplied to another mortgage account in error, and that those funds were being sent to Defendant. (*Id.*) Subsequently, Defendant received the funds that Plaintiff had paid GE Capital for the March 1997 payment, and Plaintiffs' account balance was restored to current status. (Rawlings Dep. at 39.)

Plaintiff Rawlings spent approximately $75 for secretarial services in corresponding with Defendant. (Rawlings Dep. at 23.) Additionally, Plaintiff Rawlings incurred approximately $40 in travel expenses because he had to travel to receive registered mail sent by Defendant. (*Id.*) Plaintiff Powers also incurred expenses for taking time away from work and for making copies. (Powers Dep. at 11.)

Plaintiffs filed a three-count Amended Complaint against Defendant and GE Capital on June 12, 1998, wherein they bring the following causes of action: (1) violation of 12 U.S.C. § 2605(e), the Real Estate Settlement Procedures Act ("RESPA") (Count I); (2) negligence and wantonness (Count II); and (3) defamation of credit (Count III).[2] Plaintiffs seek compensatory damages and costs. Plaintiffs move for summary judgment solely on their RESPA claim; Defendant moves for summary judgment on Plaintiffs' RESPA (Count I) and negligence and wantonness claims (Count II). Neither Party moves for summary judgment on Plaintiffs' defamation of credit claim (Count III).

---

**2.** The Parties notified the court on June 10, 1999 that Plaintiffs and GE Capital settled

their claims.

## DISCUSSION

### I. *RESPA Claim*

Plaintiffs claim that Defendant violated RESPA's provisions contained in 12 U.S.C. § 2605(e)(1) and (e)(2). Both Plaintiffs and Defendant move for summary judgment on this claim. Plaintiffs claim that qualified correspondences were sent on April 25, 1997, June 25, 1997, and August 26, 1997, and that, because the Defendant failed to respond appropriately pursuant to both § 2605(e)(1) and (2), Defendant committed six violations of RESPA. Defendant claims that no correspondence was sent on April 25, 1997, that it responded properly to Plaintiffs' June 25, 1997 correspondence, and that it did not violate RESPA.

RESPA provides that, upon receiving a qualified written request from a borrower, a loan servicer must send notice of receipt of said request and take certain actions within a prescribed amount of time. *See* 12 U.S.C. § 2605(e)(1)(A) and (e)(2). Thus, the RESPA issues before the court are: (1) whether Plaintiffs sent any qualified written requests to Defendant; (2) whether Defendant properly sent notice of receipt of such qualified written request to Plaintiffs; (3) whether Defendant properly took action with respect to such qualified written request; and (4) whether Plaintiffs suffered actual damages as a result of any alleged RESPA violation.

### A. *Qualified Written Requests*

Plaintiffs claim that three qualified written requests were sent to Defendant on April 25, 1997, June 25, 1997, and August 26, 1997. The first issue to be determined is whether a qualified correspondence was sent on April 25, 1997. Although Plaintiffs make no reference to such correspondence in the Amended Complaint, Plaintiff Rawlings in his affidavit claims that he "mailed a letter to the collection department of Dovenmuehle to the attention of Melissa on or about the 25th of April, 1997."

(Rawlings Aff. at 1.) Plaintiffs are unable to produce said letter, claiming that the "letter is unretrievable [sic] due to a computer crash." (Pls.' Resp.Ex. A.) On June 25, 1997, Plaintiff Rawlings sent another letter to Defendant, wherein he states that "[t]his is the second letter I have written your corporation on this matter." (Rawlings Aff.Ex. A.) However, the June 25, 1997 letter does not definitively reference when the prior correspondence occurred. Defendant asserts that it never received the April 25, 1997 letter, and that, "based upon the only physical evidence presented to the Court, the June 25, 1997 letter is the qualified written correspondence." (Def.'s Resp. at 4.)

 The court finds that a genuine issue of material fact exists concerning whether Plaintiffs sent a letter on or about April 25, 1997 and whether Defendant received said letter. This issue is material because it impacts on the number of RESPA violations that may have occurred.[3] Therefore, the court finds that neither Plaintiffs nor Defendant is entitled to judgment as a matter of law on this issue.

It is undisputed that Plaintiffs sent letters to Defendant on June 25, 1997 and August 26, 1997, and that Defendant received said letters. The court must next determine whether these letters constitute "qualified written requests" pursuant to § 2605(e)(1). Section 2605 defines a "qualified written request" as follows:

> For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—
>
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> (ii) includes a statement of the reason for the belief of the borrower, to the extent applicable, that the account is

---

**3.** The relevant damages section provides that "[w]hoever fails to comply with any provision of this section shall be liable to the borrower for *each such failure . . . .*" 12 U.S.C. § 2605(f) (emphasis added).

in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).

■ The court finds that both of Plaintiffs' letters satisfy the conditions of § 2605(e)(1)(B). Both letters reference Plaintiffs' names and their account number, thus satisfying § 2605(e)(1)(B)(i). Further, the court finds that both letters sufficiently state Plaintiffs' reasons for their belief that their account is in error, thus satisfying § 2605(e)(1)(B)(ii). For instance, the June 25, 1997 letter states, in relevant part:

This letter is written in response to your certified letter of June 6, 1997 ["Notice of Default"]. . . .

. I have enclosed the front and back of all mortgage payments made in 1997. You will notice that the January, February and March payments are payable to and cashed by GE Capital. Per letter to me on March 12, 1997, all payments effective 4–1–97 were to be made payable to Dovermuehle [sic] Mortgage.

The April, May and June 1997 payments were made payable to Dovermuehle [sic] and so cashed. . . .

I have also enclosed a copy of the 1996 Form 1098 from GE Capital [account history]. As you will notice, we had no late charges or late payments.

I respectfully request that this matter be corrected promptly and a letter mailed to me stating that such has been corrected. If I do not hear from your department by July 15, 1997, I will be forced to take legal action to preserve my credit and reputation.

(Pls.' Resp.Ex. A.) The August 26, 1997 letter was written by Plaintiffs' attorney and states, in relevant part:

For some period of time, Mr. Rawlings has corresponded with your company concerning his mortgage which was transferred to your company for servicing. He has furnished you with cancelled checks and a payment history from GE Capital, all of which show a perfect payment history. . . .

Despite all of the above, your company has now sent Mr. Rawlings a notice of default. In response to his request for a payment history, your company has sent the payment history of a Michael Rouse in California.

It appears that your records are in disarray. Please contact me immediately to rectify this matter or I will have no choice but to file suit.

(Pls.' Resp.Ex. A.) Therefore, the court finds these two correspondences to constitute "qualified written requests" pursuant to § 2605(e).

### B. *Failure to Provide Notice of Receipt*

Pursuant to § 2605(e)(1), a servicer must respond to a borrower's qualified written request by providing a notice of receipt of such inquiry within twenty days.[4] Plaintiffs allege that Defendant failed to comply with respect to the April 25, June 25, and August 26, 1997 correspondences. Because the court determined that an issue of fact exists concerning the April 25, 1997 letter, *see* § I.A., *supra*, the court focuses its inquiry on the latter two letters and any responses by Defendant thereto.

■ Defendant argues that it "provided an acknowledgment to Plaintiffs' June 25, 1997, correspondence within the time set out by law." (Def.'s Resp. at 4.) On July 26, 1997, Defendant sent a letter to Plaintiffs, stating "Per your request, I have attached the following document(s): Payment History." (Rawlings' Aff.Ex. A.) The court notes that it is unclear from Defen-

---

**4.** Section 2605(e)(1) provides:

If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

12 U.S.C. § 2605(e)(1)(A).

dant's letter whether it was written in response to Plaintiff's June 25, 1997 letter or to Plaintiff Rawlings' other contact with Defendant. This presents a material issue of fact because this would affect the number of RESPA violations—if Defendant's letter was written in response to Plaintiffs' other inquiry, then § 2605(e)(1) was violated as to Plaintiffs' June 25, 1997 letter. Further, an issue of fact exists regarding whether Defendant's letter was timely sent because the court does not have evidence before it concerning the date on which Defendant received Plaintiffs' June 25, 1997 letter.

Defendant does not address whether it responded appropriately to Plaintiffs' August 26, 1997 qualified written request. After conducting an examination of the record, the court concludes that Defendant did not. Within the relevant time period, Defendant did send Plaintiffs two letters concerning Plaintiffs' alleged default, dated September 3 and 8, 1997, but neither letter acknowledged Plaintiffs' August 26, 1997 letter. The court finds that Defendant's failure to timely make such acknowledgment constitutes a violation of § 2605(e)(1).

## C. *Failure to Take Action With Respect To Inquiry*

█ Pursuant to § 2605(e)(2), a servicer must take action with respect to a qualified

**5.** Section 2605(e)(2) provides:

Action with respect to inquiry
Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall—
(A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
(B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—

written request not later than 60 days after receipt of such inquiry.[5] The issue for the court is whether Defendant took action in a timely manner with respect to Plaintiffs' June 25, 1997 and August 26, 1997 requests. Defendant admits that it "was unable to resolve the matter until November 26, 1997, when it received the needed information and payment in question from GE Mortgage. This unintentional act did, in fact, violate 12 U.S.C. § 2605(e)(2), in that the corrections were not made to the account until November of 1997." (Def.'s Resp. at 5.) Thus, because Defendant concedes that it failed to take action within the requisite 60–day time period, the court finds that two violations of § 2605(e)(2) occurred as a matter of law.

## D. *Damages*

Plaintiffs claim that they suffered actual damages because they "had to take time to do correspondence, travel to pick up registered mail and suffered mental anguish ... [and] the time required to do these things [took] away from time spent gainfully employed." (Pls.' Resp. at 2.) Defendant argues that Plaintiffs "did not suffer any actual damage as a result of Dovenmuehle Mortgage's action." (Def.'s Resp. at 5.)

Section 2605(f) addresses damages and costs:

(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.
12 U.S.C. § 2605(e)(2).

Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:

(1) Individuals

In the case of any action by an individual, an amount equal to the sum of—

(A) any actual damages to the borrower as a result of the failure; and

(B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000.

12 U.S.C. § 2605(f)(1).[6] First, the court addresses Plaintiffs' claim that Plaintiff Rawlings spent approximately $75 for secretarial service correspondence and approximately $40 traveling to the post office (Rawlings Dep. at 22–23.). Defendant does not deny that Plaintiffs incurred such expenses; in fact, Defendant states that "[t]he Plaintiffs[ ] suffered only out of pocket expenses for photocopies, secretarial work and travel (to the post office to obtain certified correspondence), as a result of R.E.S.P.A. violation." (Def.'s Memo. at 7.) Thus, the court finds it undisputed that Plaintiffs incurred approximately $115.00 in actual damages for correspondence and travel.

■ Second, the court addresses Plaintiffs' claim that Plaintiffs suffered actual damages for time taken away from work. The court finds that there is insufficient evidence before it to determine whether such damages occurred, or the amount of such damages; therefore, an issue of fact exists.

Finally, the court addresses Plaintiffs' claim that mental anguish suffered by them constitutes actual damages pursuant to § 2605(f). Plaintiffs claim that Plaintiff Rawlings suffered mental anguish as follows:

Q. [I]s there any other type of damages that you claim from my client, Dovenmuehle?

A. Mental aggravation[ ]. Every time I get a certified letter, which I think there were a total of seven.... [I]t got my temper boiling at the same time because you're not sure what's going to be in that certified letter. But I knew—I would just automatically realize that this has got to be a letter from Dovenmuehle because it was the same time everything else was happening....

Q. So it's an aggravation factor as much as anything else. Is that what you're saying?

A. And mental.

Q. What kind of mental problems did this cause, if any?

A. The fact that, you know, if something is not resolved, they could possibly—if what they're saying in the letters is true, they can foreclose the house and sell it to pay the debtor. You know, all these things are going through your mind. It's a lot of trauma.

(Rawlings Dep. at 21–22.) Plaintiffs also claim that Plaintiff Powers suffered mental anguish damages:

Q. Are there any injuries that you have suffered other than economic?

A. What are you calling injuries?

Q. Emotional distress—

A. Oh, yes. I was real upset that we were getting these notices that we defaulted on payments and that they were going to foreclose on the house. That really bothered me.

(Powers Dep. at 12.) The court notes that the issue of whether mental anguish damages are recoverable pursuant to § 2605(f) is an issue of first impression in the Eleventh Circuit. Although Defendant fails to address whether mental anguish damages

---

**6.** Because Plaintiffs do not claim that they are entitled to damages pursuant to § 2605(f)(1)(B), the court declines to address whether said provision is applicable here.

are recoverable pursuant to § 2605 of RESPA, the court undertakes such inquiry and, as detailed below, finds that mental anguish damages are so recoverable.

■ The first step for the court in construing a statute "is to interpret the statutory language in accordance with its 'plain meaning.'" *Fitzpatrick v. Internal Revenue Serv.*, 665 F.2d 327, 329 (11th Cir. 1982) (citations omitted). Section 2605 of RESPA provides for the recovery of "any actual damages to the borrower" as a result of a servicer's failure to comply with said section. 12 U.S.C. § 2605(f)(1)(A). The term "actual damages," however, "has no consistent legal interpretation" because "the interpretation var[ies] with the context of use." *Fitzpatrick*, 665 F.2d at 329. Therefore, "[b]ecause 'actual damages' has no 'plain meaning' in legal lexicon," the court "attempt[s] to discern Congressional intent on this issue." *Id.* (citation omitted).

■ The court finds that both the statutory language of other sections of RESPA and RESPA's legislative history demonstrate that Congress intended RESPA to be a remedial consumer-protection statute. As such, RESPA is to be "construed liberally in order to best serve Congress' intent." *Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 707 (11th Cir.1998) (citation omitted) (addressing the remedial nature of the Truth in Lending Act ("TILA")). Remedial statutes are those "which impair no contract or vested right, and do not disturb past transactions, but preserve and enforce the right and heal defects in existing laws prescribing remedies." *Crouch v. Whatley*, 900 F.Supp. 1567, 1572 (M.D.Ala.1995) (quoting *Jones v. Casey*, 445 So.2d 873, 875 (Ala.1983)).

First, the court finds that the statutory language of RESPA demonstrates Congress' intent that RESPA be remedial and protective. In the section entitled "Congressional findings and purpose," RESPA provides:

> The Congress finds that significant reforms in the real estate settlement pro-

cess are needed to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are *protected* from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country.

12 U.S.C. § 2601(a) (emphasis added). The court finds that this language implicitly demonstrates Congress' intent to address then-existing abuses of consumers and explicitly states that RESPA is designed to protect consumers.

Second, the court concludes that legislative history shows that RESPA was created in response to abuses in real estate practices. Specifically:

> [T]he impetus for passage of RESPA was two-fold. First, a series of articles in the newspapers in the metropolitan Washington, D.C. area exposed abuses in the real estate business that Congress sought to end. (citations omitted) Second, in 1972 Congress received a joint report on mortgage settlement costs from the Secretary of the Administrator of Veterans' Affairs in which abuses, such as kickbacks and inflationary referral fees, were outlined. (citations omitted)

*United States v. Graham Mortgage Corp.*, 740 F.2d 414, 419–420 (6th Cir.1984) (legislative history citations omitted). Subsequently, RESPA was enacted in 1974 to address three problem areas:

> (1) Abusive and unreasonable practices within the real estate settlement process that increase settlement costs to home buyers without providing any real benefits to them;
>
> (2) The lack of understanding on the part of most home buyers about the settlement process and its costs, which lack of understanding makes it difficult for a free market for settlement services to function at maximum efficiency; and
>
> (3) The basic complexities and inefficiencies in the present system for recording of land titles on the public rec-

ords, which has been identified as the single most important barrier to reduce significantly the present level of settlement costs.

S.Rep. 93–866 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6546. This evidences that RESPA was designed to address past abuses and be remedial in nature. Further, Congress intended that RESPA would "ensure that the costs to the American home buying public will not be unreasonably or unnecessarily inflated by abusive practices." *Id.* This provides sufficient proof that RESPA was also intended to protect consumers.

Additionally, the court notes that RESPA has been construed by other courts as a consumer protection statute. *See, e.g., Dujanovic v. MortgageAmerica, Inc.,* 185 F.R.D. 660, 669 (N.D.Ala. 1999) (stating that Congress enacted RESPA "to protect borrowers from brokers" and that "Congress clearly stated that RESPA was designed to protect consumers"); *Bieber v. Sovereign Bank,* No. 95–200, 1996 WL 278813, at *5 (E.D.Pa. May 23, 1996) (stating that RESPA "is directed at protecting the buyer and remedying material nondisclosures in settlement statements").[7]

▮ Because the court construes RESPA as a remedial, consumer-protection statute, it must be "construed liberally in order to best serve Congress' intent." *Ellis,* 160 F.3d at 707 (citations omitted).

Regarding the damages provision of § 2605, the court reads "actual damages" broadly so as to encompass mental anguish damages. In reaching this conclusion, the court is persuaded by findings of other courts addressing other consumer-protection statutes that are remedial in nature, wherein said other courts have found "actual damages" provisions to include damages for mental anguish. *See, e.g., Stevenson v. TRW, Inc.,* 987 F.2d 288, 296 (5th Cir.1993) (stating that the Fair Credit Reporting Act ("FCRA") "authorizes a consumer to recover actual damages, which include humiliation or mental distress, even if the consumer has suffered no out-of-pocket losses"); *McGrady v. Nissan Motor Acceptance Corp.,* 40 F.Supp.2d 1323, 1338 (M.D.Ala. 1998) (finding that the Fair Debt Collection Practices Act ("FDCPA") permits damages for mental anguish); *Smith v. Law Offices of Mitchell N. Kay,* 124 B.R. 182, 185 (D.Del.1991) (noting that FCRA provides for actual damages for emotional distress, and finding that actual damages for emotional distress are permitted under FDCPA); *Bryant v. TRW, Inc.,* 487 F.Supp. 1234 (E.D.Mich.1980), *aff'd,* 689 F.2d 72 (6th Cir.1982) (finding that actual damages award of $8,000 for embarrassment and humiliation for violation of FCRA not excessive).

In light of Congressional intent as demonstrated in both RESPA's statutory lan-

---

**7.** The court notes that at least one court has found that § 2605 of RESPA "is not a consumer protection statute." *Katz v. Dime Sav. Bank, FSB,* 992 F.Supp. 250, 255–256 (W.D.N.Y.1997). In *Katz,* the court reached this conclusion based on the legislative history of § 2605:

> [Section 2605] was originally enacted by Congress in 1990 as part of the Affordable Housing Act (P.L. 101–625). The legislative history of the Affordable Housing Act explains that the purpose of the Act was "to authorize a comprehensive, new housing policy that can mobilize sustained national effort to provide more affordable housing for all Americans." (citation omitted) Thus, the duty of a loan servicer to respond to borrower inquiries is just one small part of a broad statute designed to help facilitate home ownership.... If Congress had in-

tended for this statute to have a broader remedial purpose, then it would have explained such an intention either in the language of the statute or the accompanying legislative history.

*Id.* This court disagrees with the *Katz* court's conclusion. In 1990, Congress purposefully inserted the contents of § 2605 into RESPA. As delineated above, RESPA is clearly a remedial, consumer-protection statute. Had Congress intended for this one section of RESPA not to serve a remedial purpose, it is the court's belief that Congress would have been explicit with such intention, particularly as it would have been contrary to the purposes of the remainder of the statute. As Congress made no such reference, the court finds that § 2605, like the rest of RESPA, is a remedial, consumer-protection statute.

guage and legislative history, as well as other courts' construction of damages provisions in other remedial consumer-protection statutes, the court finds that the term "actual damages" as used in § 2605(f) of RESPA encompasses mental anguish damages.

Although the court determines that recovery of mental anguish damages is allowable under § 2605 of RESPA, the court finds that an issue of fact exists as to whether Plaintiffs have suffered any mental anguish damages and, if so, how much. Therefore, the court finds that summary judgment on this issue is due to be denied as to both Plaintiffs' and Defendant's summary judgment motions.

## II. *State Law Claims*

Defendant moves for summary judgment on Plaintiffs' negligence and wantonness claims (Count II). The court finds that Defendant's Motion For Partial Summary Judgment is due to be denied as to Plaintiffs' negligence claim, except as to mental anguish damages, for which it is to be granted, and granted as to Plaintiffs' wantonness claim.

### A. *Negligence*

Defendant claims that summary judgment should be granted on Plaintiffs' negligence claims because: it did not owe any duty to Plaintiff; if it did owe a duty, said duty was satisfied; and Plaintiffs did not incur damages as a result of the alleged negligent conduct. In response, Plaintiffs claim that Defendant owed Plaintiffs a duty pursuant to § 2605 of RESPA, and the court agrees.

 "It is settled that for one to maintain a negligence action the defendant must have been subject to a legal duty." *Thompson v. Mindis Metals, Inc.,* 692 So.2d 805, 807 (Ala.1997) (citations omitted). "A legal duty arises either from the common law or from a statute." *Id.* The

court finds that Defendant had a legal duty arising from a statute because § 2605 of RESPA imposes duties on mortgage loan servicers. Specifically, under § 2605, mortgage loan servicers must: (1) provide a notice of receipt of a qualified written request within 20 days of receipt of said request, *see* 12 U.S.C. § 2605(e)(1); and (2) take certain action with respect to the qualified written request within 60 days of receipt of said request, *see id.* § 2605(e)(2).

Additionally, as discussed above, Plaintiffs demonstrate that Defendant violated its statutory duty. *See* §§ I.B.i. and I.B.ii., supra. Further, Plaintiffs demonstrate that they suffered damages by having to pick up registered mail, take time away from work, and write correspondence. Therefore, the court finds that Plaintiffs have proven the requisite elements for negligence, namely that Defendant had a duty, Defendant violated said duty, and Plaintiffs were damaged as a result of Defendant's conduct.

 The court finds, however, that Plaintiffs' claim for mental anguish damages for negligence cannot lie. The Alabama Supreme Court has definitively stated that one can recover for emotional injury in a negligence action only under two circumstances: (1) where a plaintiff "sustain[s] a physical injury as a result of a defendant's negligent conduct," *White Consol. Indus., Inc. v. Wilkerson,* 737 So.2d 447, 448 (Ala. 1999) (quoting *AALAR, Ltd. v. Francis,* 716 So.2d 1141, 1147 (Ala.1998)); and (2) where a plaintiff was "placed in immediate risk of physical harm by that conduct." *Id.* (quoting *AALAR, Ltd.,* 716 So.2d at 1147). The Alabama Supreme Court "has not recognized emotional distress as a compensable injury or harm in negligence actions outside the context of emotional distress resulting from actual physical injury or, in the absence of physical injury, fear for one's own physical safety." *AALAR, Ltd.,* 716 So.2d at 1148 (citations omitted).[8] Here,

---

8. Plaintiffs cite *City of Mobile v. Jackson,* 474 So.2d 644 (Ala.1985), *Lawyers Title Ins. Corp. v. Vella,* 570 So.2d 578 (Ala.1990), *overruled*

by *State Farm Fire & Cas. Co. v. Owen,* 729 So.2d 834 (Ala.1998), and *B & M Homes, Inc. v. Hogan,* 376 So.2d 667 (Ala.1979), to sup-

Plaintiffs allege neither physical injury nor reasonable risk thereof.

Based on the foregoing, the court finds that Defendant's motion for summary judgment as to Plaintiffs' negligence claim is due to be denied, except as to Plaintiffs' claim for mental anguish damages. The court finds that Plaintiffs' claim for mental anguish damages pursuant to their negligence claim is due to be dismissed.

### B. *Wantonness*

Plaintiffs also allege that "Defendants['] failure to perform as required was wanton, willful and oppressive." (Am.Compl.¶ 25.) Plaintiffs claim that "Defendant brazenly ignored request after request, even a letter from an attorney threatening suit. Indeed it sent a foreclosure notice after this letter." (Pls.' Resp. at 3.) Defendant argues that: it breached no duty owed to Plaintiffs; Plaintiffs suffered no physical or economic injury; and its actions did not rise to the level of wantonness. As discussed above, the court finds that Defendant did breach a duty to Plaintiffs, and that Plaintiffs did suffer economic injury. *See* §§ I.B.i., I.B.ii., and I.C., supra. Therefore, the remaining issue is whether Defendant's conduct rises to the level of wantonness, and the court finds that it does not.

The Alabama Supreme Court has defined wantonness as "the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Bozeman v. Central Bank of the South*, 646 So.2d 601, 603 (Ala.1994). Further, the Alabama Code provides that wantonness is "conduct which is carried on with a reckless or conscious disregard of the rights or safety of others." Ala.Code § 6–11–20(b)(3) (1975).

Viewing the facts in the light most favorable to Plaintiffs, Defendant failed to comply with the provisions of § 2605(e)(1) by failing to provide notice within 20 days of receipt of Plaintiffs' August 26, 1997 letter, and further failed to comply with the provisions of § 2605(e)(2) by failing to take appropriate action within 60 days of receipt of Plaintiffs' June 25, 1997 and August 26, 1997 letters. Additionally, Defendant sent approximately eight notices of default, five of which were sent subsequent to receipt of Plaintiffs' attorney's letter threatening suit.

■■■ The court finds that these actions do not constitute wantonness. The mere sending of notices of default does not, and indeed did not, cause a foreclosure on Plaintiffs' house. Moreover, no additional steps were taken towards foreclosure. Thus, from the sending of the default notices alone, injury was not likely to result. Further, the evidence before the court is insufficient to permit a finding of reckless or conscious disregard. The court specifically notes that Defendant did respond to Plaintiffs' June 25, 1997 letter, although said response erroneously included the credit history of a third person not a party to this action. While Defendant's actions may have been negligent, the court finds as a matter of law that they were not wanton.

Based on the foregoing, the court finds that Defendant's Motion For Partial Summary Judgment as to Plaintiffs' wantonness claim is due to be granted.

---

port their claim for mental anguish damages pursuant to their negligence claim. The court finds *B & M Homes* and *Vella* to be inapposite, however, as they do not concern negligence claims. Rather, *B & M Homes* allows mental anguish damages for a breach of contract claim, and *Vella* concerns a claim for reckless misrepresentation. Further, in *Jackson*, although the Alabama Supreme Court

permitted recovery of mental anguish damages for a negligence claim, the court failed to address the physical injury or risk thereof factor. Therefore, this court is not persuaded by that one case and instead relies on the more recent cases of *AALAR, Ltd.*, 716 So.2d 1141, and *Wilkerson*, 737 So.2d 447, which speak directly to this point.

## ORDER

Accordingly, it is CONSIDERED and ORDERED that Plaintiffs' Motion For Summary Judgment and Defendant's. Motion For Partial Summary Judgment as to Plaintiffs' RESPA claim be and the same are hereby GRANTED IN PART and DENIED IN PART as follows:

1. Because an issue of material fact exists concerning whether Plaintiffs' April 25, 1997 letter constitutes a qualified written request pursuant to 12 U.S.C. § 2605(e)(1), both Plaintiffs' and Defendant's motions for summary judgment be and the same are hereby DENIED on this issue;

2. Because Plaintiffs' letters dated June 25, 1997 and August 26, 1997 constitute qualified written requests pursuant· to 12 U.S.C. § 2605(e)(1), Defendant's motion for summary judgment be and the same is hereby DENIED and Plaintiffs' motion for summary judgment be and the same is hereby GRANTED on this issue;

3. Because an issue of material fact exists concerning whether Defendant violated 12 U.S.C. § 2605(e)(1) as to Plaintiffs' June 25, 1997 letter, Plaintiffs' and Defendant's motions for summary judgment be and the same are hereby DENIED on this issue;

4. Because Defendant, as a matter of law, violated 12 U.S.C. § 2605(e)(1) as to Plaintiffs' August 26, 1997 letter, Defendant's motion for summary judgment be and the same is hereby DENIED and Plaintiffs' motion for summary judgment be and the same is hereby GRANTED on this issue;

5. Because Defendant, as a matter of law, violated 12 U.S.C. § 2605(e)(2) as to Plaintiffs' June 25, 1997 and August 26, 1997 letters, Defendant's motion for summary judgment be and the same is hereby DENIED and Plaintiffs' motion for summary judgment be and the same is hereby GRANTED on this issue;

6. Because Plaintiffs, as a matter of law, suffered actual damages resulting from travel and correspondence, Defendant's motion for summary judgment be and the same is hereby DENIED and Plaintiff's motion for summary judgment be and the same is hereby GRANTED on this issue;

7. Because an issue of material fact exists as to the amount of actual damages Plaintiffs incurred resulting from time taken away from work, both Defendant's and Plaintiffs' motions for summary judgment be and the same are hereby DENIED on this issue; and

8. Because an issue of material fact exists as to whether Plaintiffs suffered actual damages because of time taken away from work as well as whether Plaintiffs suffered mental anguish damages, both Defendant's and Plaintiffs' motions for summary judgment be and the same are hereby DENIED on this issue.

It is further CONSIDERED and ORDERED that Defendant's Motion For Partial Summary Judgment as to Plaintiffs' negligence claim be and the same is hereby DENIED, except as to Plaintiff's claim for mental anguish damages pursuant to their negligence claim, for which Defendant's Motion For Partial Summary Judgment be and the same is hereby GRANTED.

It is further CONSIDERED and ORDERED that Defendant's Motion For Partial Summary Judgment as to Plaintiffs' wantonness claim be and the same is hereby GRANTED.